## G. W. GLASSCOCK ET AL. V. T. P. HUGHES.

### (Case No. 1065.)

1. DISQUALIFICATION OF JUDGE.— The fact that a judge had at some former period been connected as counsel with matters in litigation before him, or that he had acted as attorney for a part owner of a survey of land in litigation in the cause, but who was not interested in the suit pending, does not disqualify him from sitting on the trial of the cause.

2. PARTITION — PLEADING.— Though, in a suit for partition, all who have an interest should be made parties, it is not necessary that the petition should aver the extent of each defendant's interest; it is sufficient to allege that they are co-tenants of the whole tract of land, leaving it for the defendants to show their respective interests, if they desire partition among themselves.

3. PARTITION — PRESUMPTION — FACT CASE.— See opinion for acts and conduct of parties held properly admissible in evidence to establish a parol partition of land.

4. PAROL PARTITION OF LAND.— A parol partition of land is not within the statute of frauds, nor is possession under it necessary to its validity. When those who it is alleged made it are dead, when it is of ancient date, and from the lapse of time it is impossible to give evidence of the very making of the partition, all the conduct and acts of the parties, and every circumstance of acquiescence in such acts as are consistent only with the fact that a partition had been made, should be admitted in evidence.

5. EVIDENCE.— The fact that one claiming under an alleged ancient partition of land has paid taxes on the interest claimed by him, should be admitted in evidence as a circumstance tending to show the partition.

6. Ancient document.— An ancient document, signed by the ancestor, is admissible against his heirs to show the specific interest conveyed in a deed made by him, when the evidence involves no contradiction of the language of the deed.

7. Ancient document.— A deed proves itself as an ancient document only when it is thirty years old.

8. Charge of court — Estoppel.— See opinion for charge of court on the subject of estoppel, which, though abstractly correct, was held improper because calculated to mislead the jury from considering the real object of the testimony introduced.

9. Evidence — Charge of court.— One attempting to establish an ancient parol partition of land offered in evidence deeds made by his ancestor, who, it was claimed, made the partition, as a circumstance to establish the partition. *Held*, that a charge of the court to the effect that deeds to specific portions of the land could not be construed as acts of hostility to the balance of the tract of land, was error, as tending to divert the jury from considering the real purpose of the evidence, which was that it might be considered in connection with other evidence as tending to show partition.

10. Land certificate — Tenant in common.— A joint owner of a land certificate may locate separately the interest owned by him, so as not to create therein a tenancy in common in it with those owning the other interests in the certificate.

Appeal from Williamson. Tried below before the Hon. E. B. Turner.

The Willis Donahoe, Jr., league and labor was located in Williamson county in two tracts, one on Brushy creek and one on Donahoe creek; both tracts were surveyed in 1853, and subsequently patented in the name of G. W. Glasscock, assignee of Donahoe.

The A. L. Eaves league was located in Williamson, Milam, Comanche and Callahan counties, and also patented to G. W. Glasscock, assignee of Eaves.

In 1839 Glasscock, joined with one T. B. Huling, conveyed to Henry Millard one-half of the Donahoe league and labor certificate, and one-fourth of the A. L. Eaves league certificate. The certificates both were issued to G. W. Glasscock, assignee.

Millard died in 1844, leaving his two sons his heirs, Fred S. and Henry B. Millard.

These heirs in 1857 conveyed all the interest they took by descent in the Donahoe and Eaves certificates and lands, being one-half of the Donahoe and one-fourth of the Eaves, to Hughes and Vontress.

Ed. H. Vontress died in 1864, and his estate is in process of administration in Williamson county, and in a partition suit between T. P. Hughes and the heirs of Vontress, it had been decreed that Hughes take three-fourths and the heirs of Vontress one-fourth of the Hughes and Vontress lands, and in a partial partition under the judgment, the Donahoe lands had been allotted to Hughes — the tract on Brushy being valued at $4 and that on Donahoe creek at $2 per acre, and so charged to Hughes in the partition.

G. W. Glasscock died in 1868, and his estate was administered in Travis county. The heirs of Glasscock set up claim to the Brushy creek (Donahoe) survey and the whole of the A. L. Eaves lands, and in partition of the Glasscock estate, six hundred acres of the Brushy creek survey and all of the Eaves tracts were divided among the Glasscock heirs.

Glasscock in his life-time had deeded all of the Brushy survey but six hundred acres in severalty.

February 13, 1872, Hughes instituted this suit in the district court of Williamson county against the heirs and representatives of Vontress and the heirs of Glasscock, for a partition of the lands.

The whole of the Donahoe and part of the Eaves lands were situated in Williamson county, where also resided all the heirs of Vontress and two of the heirs of Glasscock. The other heirs of Glasscock resided two in Travis and two in Bexar counties.

The petition set out the rights of plaintiff and of the heirs of Vontress in the Donahoe and Eaves lands; alleging in addition that all the other interest therein was claimed by the Glasscock heirs, who were made parties.

March 4, 1873, plaintiff amended, setting out the field notes of the several surveys, giving a history of the title which he claimed; asserted title in Glasscock, Sr., to half of the Donahoe league and labor, the other half as conveyed to Millard; that Glasscock had sold off large parts of the Brushy creek Donahoe survey; asking that such parts so sold be allotted to the heirs of Glasscock, but that the equivalent in value be allotted plaintiff in the other lands sought to be partitioned. As to the Eaves tract, the amendment asserted ownership in plaintiff and the Vontress heirs of one-fourth interest, and that the legal title of the remainder was in Glasscock, who had pretended that he had given one-fourth for locating same, but of which proof was asked.

The defendants' demurrer raised the following questions:

1. That as to the Donahoe survey there was no privity of interest between the heirs of Vontress and the heirs of George W. Glasscock, Sr., because the appellee set up a title under the order of the district court in the then pending suit between Hughes and the Vontress heirs concerning the Donahoe survey, vesting all the interest of the Vontress heirs in the appellee, and that to this extent there was an improper joinder of parties defendant.

2. That as to the Eaves survey the appellee's pleadings were faulty, because he failed to show who were all the owners of the Eaves survey. He failed to set out with sufficient certainty the extent of the interest of himself and of the heirs of Vontress in that survey, and he also failed to set out the character and extent of the interest of the appellants in it.

The appellants then answered to the merits, and, after pleading the general issue, set up in this first answer the following defenses:

1. They denied the appellee's title to any part of the Eaves survey; asserted the exclusive ownership of it in

themselves, and that it had been partitioned among the heirs of George W. Glasscock, Sr., by the probate court of Travis county.

2. As to the Donahoe certificate, they alleged that their ancestor, George W. Glasscock, Sr., owned one-half of it; that he located his half on Brushy creek; that he held this tract of land, claiming the exclusive ownership of it, with the knowledge of all the parties, and sold during his life-time, publicly and openly, by metes and bounds, all of this half league except about six hundred acres, without objection or protest from anybody; received and used all the purchase money from such sales, and that since his death it had fallen to the share of his daughter, Mrs. Logan.

3. As to that part of the Donahoe land on Donahoe creek, they said that it still belonged either to the Millard heirs, or to Talbot, or to themselves, but that at all events the appellee does not own it.

4. They further set up that long prior to the death of H. Millard (which occurred in 1843 or 1844), and during the life-time also of Huling and Glasscock, Sr., the three constituting the firm of T. B. Huling & Co., had a settlement and partition of their respective interests in the entire Donahoe certificate; that this league and labor certificate was divided into equal shares long before it was located and patented; that under this ancient partition their ancestor located his half of his certificate on Brushy creek, while the Donahoe creek part fell to the share of H. Millard, and that under this partition Glasscock, Sr., exercised exclusive control of the Donahoe land on Brushy creek, with full knowledge and acquiescence on the part of Millard and of his heirs and assigns, while the latter exercised like acts of ownership over the land on Donahoe creek.

5. By an amended answer, appellants set up as a further defense, that on the 20th of January, 1839, the

firm of T. B. Huling & Co. sold one-half of the W. Donahoe, Jr., league and labor certificate, and that afterwards George W. Glasscock, Sr., individually purchased this half which had been sold by the partnership, and that it thus became his private property; that in 1842 and 1843, and some time prior to the death of Millard, there was a partition of the interest acquired and held under the Donahoe certificate, under which that part of the Donahoe certificate located on Brushy creek fell to Glasscock, Sr., and the part located on Donahoe creek fell to H. Millard.

6. That under this ancient parol partition, the estate and heirs of Millard took charge of the Donahoe creek land, and that Millard's administrator sold it to J. W. Talbot. That the heirs of Millard, dissatisfied with this sale, brought suit against Talbot on the 23d of September, 1857, more than ten years before the death of George W. Glasscock, Sr., and without joining him as a party defendant, in which they asserted that they were the sole owners of the land on Donahoe creek, and in which they accurately described it by metes and bounds, they having previous to that date located it there. That the appellee having bought the interest of the Millards, intervened in that suit in his own right and on behalf of the Vontress heirs, and claimed the exclusive ownership of this land; and that finally, by a compromise in that suit, it was partitioned under a consent decree, under which Talbot retained about eight hundred acres, while the appellee recovered the balance.

7. They further set up that the ancient parol agreement and partition was acted upon and concurred in by all the parties to it in good faith up to and after the 16th day of April, 1870, when, after the death of Glasscock, Sr., the consent decree between Talbot and the Millards was entered; that in March, 1870, the heirs of G. W. Glasscock, Sr., still acting under this ancient partition, divided the

Donahoe land on Brushy among themselves; and that all the parties, including the heirs of Glasscock, Sr., and the appellee himself, had acted in good faith under this partition.

8. It was further alleged that more than thirty years had elapsed since this alleged partition was made; that all the Brushy creek part of the Donahoe land had been sold to strangers and innocent persons except about six hundred acres; that more than one-third of the other half on Donahoe creek had also been sold to and was held by strangers, and that this long lapse of time, the antiquity of the transactions, the long acquiescence of all parties, the equities which had in the meantime sprung up, should be a bar against the appellee's claims, and that in equity and good conscience the ancient settlement should not be disturbed after the death of all the parties to it.

A motion for a change of venue was made by the appellants. It was based upon the fact that the pleadings put in issue the title to the Donahoe land on Donahoe creek, and necessitated an inquiry as to the proper construction to be placed upon the judgment rendered concerning that tract of land in the suit between Talbot and the Millards. It was proved that in that case the presiding judge was of counsel, and consented by an agreed decree to a partition of it with the appellee, and that he had, as attorney for Talbot, before the institution of that suit, filed a protest in the land office against the issuance of a patent for the land on Donahoe creek.

No deed of partition or written contract for partition was alleged or proved.

The jury returned a verdict for plaintiff, upon which the court decreed partition, protecting, however, the vendees of Glasscock by charging all the land held by them to the share of the heirs of Glasscock, and protecting Talbot by charging that held by him to the share of Hughes; directing partition to be made of the remainder, so as to

be equal in value, taking into consideration the value of the lands so sold, and appointing commissioners to make the partition under the decree.

The evidence relied on to establish the parol partition is quite too voluminous to report. Enough of it will be apparent from the opinion, which contains also the charges of the court which were held to be erroneous. The ancient document referred to in the opinion purports to be a memorandum of a settlement made January 20, 1839, being the same date of the deed by Huling & Glasscock to Millard, conveying to Millard the two thousand three hundred and two acres of the Donahoe and one thousand one hundred and seven acres of the Eaves survey.

*Hancock, West & North*, for appellants.

*Terrell & Walker*, for appellee.

QUINAN, J. COM. APP.— There was no error committed in refusing to change the venue of the suit.

The reasons set out in the motion for change of venue are "that the presiding judge has been connected as counsel at one period in all the matters, or a portion of them, in litigation in this suit;" and in the amended motion, "that in addition to the connection of the presiding judge as counsel in the case when the decree in Talbot *v.* Millard was rendered, he also acted as attorney for Jos. W. Talbot, one of the owners of a part of the Donahoe league, . . and as such attorney filed a protest in the land office, etc., by reason of which connection with the matters in suit he is disqualified."

The judge is prohibited from sitting to try a case "where he shall have been of counsel in the case." We do not think "to have been connected as counsel at one period with the matters, or a portion of them, in litigation

in this suit, or that he had been counsel in the case of Talbot *v.* Millard," was sufficient to disqualify him. In H. & T. C. R. *v.* Ryan, it was held to be error to change the venue because the judge had, as counsel, given an opinion in regard to the validity of the title to the land in controversy, it not appearing that the opinion was given in the very case. 44 Tex., 430. And in Taylor *v.* Williams it was held to be no disqualification "that the judge had been of counsel in cases involving the same title that is involved in this case." 26 Tex., 583.

There was no error in overruling the defendants' demurrers. It is true that, in suits for partition, all who are interested in the land must be made parties, otherwise there can be no valid partition. The plaintiff must set out his own title, and the interest he claims in the whole. But it is not necessary, if all who own the residue of the lands are made parties, that he should set out the several interests they claim. It is enough if it be shown that plaintiff and defendants are co-tenants of the whole tract. He can obtain partition of his interest, though partition may not be made of the several interests of his co-tenants. It is for the defendants, if they so wish, to set up their specific shares and have them allotted to them in severalty. This is clearly the meaning of what is said in Bruly *v.* Ship Channel Co., 45 Tex., 8. "It must appear that the parties to the suit among them are entitled to the estate." But if the plaintiff were to undertake to set out the interests of the co-tenants, and set them out incorrectly, that would not defeat partition. In this suit the respective rights and interests of the parties could be litigated and determined, whether plaintiffs or defendants. De Uprey *v.* De Uprey, 27 Cal., 336; Ladd *v.* Perley, 18 N. H., 396; Abbot *v.* Berry, 46 N. H., 69.

We think it is sufficiently shown in the petition, that all parties "claiming the land and setting up right" thereto are parties, except indeed the purchasers in sev-

eralty under Glasscock; and it is expressly asked that the lands Glasscock sold in his life-time be set apart to his share. This Glasscock's vendees are entitled to have done if no prejudice resulted therefrom to Glasscock's co-tenants, and certainly with their assent, so that these vendees are no way concerned in this litigation. Fitch *v.* Boyer, 51 Tex., 336; March *v.* Hayton, 50 Tex., 251; Arnold *v.* Cauble, 49 Tex., 527.

But the questions of gravest import in this case arise upon the reception and rejection of testimony and the judge's charge.

It is a suit for partition of the A. L. Eaves league of land, and the Donahoe league and labor, this latter being treated as two surveys, one on Brushy and the other on Donahoe creek.

It seems to be conceded that these lands were once owned by the firm of T. B. Huling & Co., which was composed of Geo. W. Glasscock, T. B. Huling and Henry Millard, and under them the parties to this suit claim.

The plaintiffs allege that these lands have never been divided.

The defendants, Glasscock and others, the heirs of Geo. W. Glasscock, claim the whole of the Eaves league, and allege that the Donahoe league and labor had been divided between their ancestor and his co-tenants by parol before 1843; that under this partition the Donahoe creek survey fell to Millard, and the Brushy creek survey to Glasscock; that Glasscock has exercised acts of ownership over this Brushy creek land, had sold all of it but six hundred acres, and that has been partitioned among his heirs; that Millard, or those claiming under him, have controlled and exercised acts of ownership over the Donahoe creek land; that the Eaves survey has been divided among Glasscock's heirs, and that their claim to the land, and their father's in his life-time, has been open, and that they have paid taxes thereon, etc.

To prove this parol partition of the Donahoe lands, the defendants, in the absence of direct proof of the fact of division of the lands, relied upon the presumptions deducible from the acts and conduct of the parties with relation to it.

The land on Brushy was located by Glasscock. The patent was issued to him in 1855. He made repeated sales of the land in severalty, with deeds of warranty, in tracts of various sizes. There is some proof tending to show his claim to the land, and declarations with respect to it, as his exclusive estate; and when he died the residue unsold was allotted by the probate court to one of his heirs in the division of his estate.

The defendants further offered to introduce the certificate of the comptroller, showing the payment by Glasscock uninterruptedly from the year 1855 to 1869 and 1870, of the taxes on the Donahoe and Eaves lands in Williamson and Milam counties, and also receipts from the land office for the government dues on the Eaves land. And also a duly certified copy from the land office of a letter of plaintiff, addressed to Captain Crosby (then commissioner), the purport of which is, so far as relates to this controversy, that Fred S. and Henry B. Millard, sons of Col. Henry Millard, "own two thousand three hundred and two acres in the Willis Donahoe certificate; said certificate is located in two places in this county; they have gotten the original transfer in their possession for said amount of said certificate, . . . and he applies for a patent to said heirs of two thousand three hundred and two acres." This letter is dated October 7, 1855.

To the introduction of this proof the plaintiff excepted as irrelevant and tending to prove no issue in the cause, and the testimony was rejected.

The defendants further gave in evidence the petition in intervention of the plaintiff Hughes, in the suit of Talbot

*v.* Millard, in which he avers that he and Vontress are the owners, by purchase from the Millards, of the land on Donahoe creek, patented to Willis Donahoe, Jr., setting out the field notes and the decree in that suit, by which it appears that plaintiff, as surviving partner, was allotted in partition twenty-nine forty-eighths of the Willis Donahoe one-half league, and nineteen forty-eighths of it to Jos. W. Talbot.

There was proof, also, that Hughes was a lawyer employed by the Millard heirs to investigate the state of their land affairs, and had done so diligently; that he knew of Glasscock claiming the Donahoe land as his own in 1867, and knew of it at the partition of Glasscock's estate in 1870. This suit was instituted February 15, 1872. The Millard heirs were in Williamson county, where the land lies, in the latter part of 1854; from 1856 or 1857 they have remained in Williamson county.

The plaintiffs read in evidence a deed from Glasscock & Huling to Millard, dated January 20, 1839, for "Land purchased of Willis Donahoe, Jr., two thousand three hundred and two acres." This deed recites that Huling, Glasscock and Millard were joint partners from 1835 to that date; that then a dissolution of the partnership was effected, and the parties had agreed upon a division of all their lands and land claims, "and do by these presents make a full and equal partition among them of and in the aforesaid land claims and locations, amounting to ninety-nine thousand nine hundred and forty-six acres; . . . that is to say, Henry Millard shall have all the following parcels, locations or claims of land, part of said amount," etc., and proceeds to convey various tracts of land, including the Donahoe claim.

The plaintiffs also read what purports to be a division and settlement of the affairs of the partnership of Huling & Co., dated May 27, 1850, and signed by Glasscock, Huling, and Neil McGaffey, administrator of H. Millard, de-

ceased; but which, as appears to us, must have been prepared, and in fact agreed upon, on January 20, 1839. This "ancient document" shows that at that date the firm of Huling & Co. owned but two thousand three hundred and two acres of the Willis Donahoe claim, and two thousand two hundred and fourteen acres of A. L. Eaves' claim; that of the Donahoe headright there had been before then sold two thousand two hundred and fourteen acres, and that in the division Henry Millard "drew out" two thousand three hundred and two acres, the Willis Donahoe, Jr., headright, and one thousand one hundred and seven acres of the A. L. Eaves headright. So that it appears that by the deed of the same date, Huling and Glasscock conveyed to Millard all interest in the Donahoe headright the firm owned, and that some other party then owned two thousand three hundred and two acres in the same Donahoe headright, league and labor.

With this proof before the jury, under the pleadings, the question is presented, was this exclusion of the tax receipts, and receipts for government dues, and this letter of the plaintiff Hughes to the commissioner of the land office, error? And we are clearly of opinion that it was error.

In this state it is well settled that a parol agreement for the partition of lands is valid. Houston v. Sneed, 15 Tex., 309. It is not within the statute of frauds. Stuart v. Baker, 17 Tex., 419. It is not necessary that it shall be executed by taking possession, to render it valid. It is to be proved as any other contract. And where, as in the present case, the transaction is of ancient date, and the men who made it are dead, and it may be impossible from the lapse of time to give evidence of the very making of the agreement, and parties are compelled to resort to proof of it by circumstances and inferences from the acts of the parties and their conduct and acquiescence in such acts as were consistent only with the fact that a partition

had been made, whatever could reasonably throw light upon the matter, or from which an inference might or might not be drawn by a jury to establish the fact, ought to be permitted to go to them. It is not the business of the court to determine the weight which should be attached to the testimony offered. It may seem to the court to be very trivial, but that does not warrant its rejection. Here the proof of partition, or of the separate ownership of Glasscock in these lands, may have been dependent upon. the connection of many circumstances trifling in themselves, which, taken all together, might have been judged conclusive by a jury.

If it could be shown, as it was shown, that Glasscock located and took out the patent for this Brushy creek land in his own name in 1855; that he spoke of it and "claimed it always" as his own land; that he sold it off from time to time to purchasers in distinct parcels by metes and bounds, warranting the title, and receiving the money for it to his own use; that all this time, from the location of the land in 1855 until the day of his death, and until the division of the unsold residue among his heirs, the heirs of Millard resided in the county near the land, and made no claim to, and demanded no division of, the proceeds until the institution of this suit in 1872; that, as appears from the "ancient document," although in 1839 the whole Willis Donahoe certificate had belonged to the partnership of Glasscock, Huling & Millard, yet that their half of it had been sold, and the other half which only remained the property of the concern had been drawn out or allotted to Henry Millard; and in addition to these facts and circumstances, the defendant had been permitted to prove not only that Glasscock had always paid the whole tax upon this Brushy land, but that the agent and attorney of Millard's heirs, the present plaintiff, had as far back as October, 1855, been in possession of the transfers to the two thousand three hundred and two acres of the

Donahoe certificate, which was located on Donahoe creek, and that he and they claimed that land as their land, and demanded the issuance of the patent to them in their own names by the commissioner of the land office,— would not this be, to say the least of it, testimony not "immaterial or irrelevant," tending to show a partition of the land, and that Glasscock held for himself by reason of it the Brushy lands, and the Millard heirs the Donahoe creek lands?

And as to the payment of taxes by Glasscock, experience we think shows that men are usually content with paying the taxes on their own lands and suffering others to do the same. The testimony offered should properly have been submitted to the jury with the other proofs, as indicative of the character of Glasscock's claim.

The question here was not as to the sufficiency of the proof to establish the thing in controversy, but whether the jury were not entitled to hear it, and give it such weight and consideration as they might think it deserved. Wharton on Ev., 733; Law *v.* Patterson, 1 Watts & Serg., 187; Williams *v.* Hillegas, 5 Pa. St., 492; Little *v.* Downing, 37 N. H., 366; Draper *v.* Short, 25 Md., 204.

Objection was made by appellants to the admission in testimony of the "ancient document" referred to — the schedule of T. B. Huling & Co. It is signed by Glasscock and by Huling. It was properly admitted as an admission by Glasscock, under whom they claim, of the facts recited in it; and it was offered to show in relation to the Eaves land that the quarter of the league which McGaffey, as administrator of Millard, released to Glasscock, was not the interest of one thousand one hundred and seven acres in that league conveyed by Glasscock and Huling to Millard in 1839. This was not to contradict that deed but to show what land was meant by it. It was properly admitted in evidence.

The defendants offered to read in evidence a deed from one J. S. Eaves for one-half the Eaves league. It was objected to because there was no proof of its execution, and not duly recorded. It was then offered as an ancient deed. It was dated December 22, 1852. Under the decision in Stroud v. Springfield, 28 Tex., 663, it was not admissible. The rule is there recognized that a deed proves itself only when it is thirty years old. Wharton on Ev., 733; 1 Greenleaf, 570.

In view of what may be its age at the next trial of the cause, it is perhaps proper to add, as this Eaves land seems to be wild land, that payment of taxes has been received as equivalent to proof of possession in connection with such deeds. 5 Pa. St., 492.

It is assigned for error that the judge erred in his charge to the jury. We are of opinion that the charge was calculated to mislead the jury, and that its general effect was a charge upon the weight of the testimony.

In relation to the intervention of Hughes in the suit of Talbot v. Millards, the language of the court is:

"It is insisted that Hughes is estopped from denying that there has been a partition, because he intervened in the suit of Talbot v. Millards, and recovered these lands in that suit as against both Millard and Talbot.

"I charge you that the fact that Hughes intervened in that case without making Glasscock a party also, does not estop him from claiming partition. The rule of law as to estoppel is, when one by his words or conduct willfully causes another to believe the existence of a certain state of facts or things, and induces him to act upon that belief so as to alter his own previous position, the former is concluded from averring against the latter a different state of things as existing at the time.

"The recovery of Hughes in that case is in law a recovery for the benefit of all his co-tenants, if he had any co-tenants; and if it is not shown that Glasscock was

influenced, misled or deceived in consequence of such act, nor that he has ever acted differently from what he otherwise would have done.

"This doctrine of estoppel does not apply on account of that act."

Now, manifestly, this is misleading. The question in the case was, had there been a partition between the original owners of these lands? The effort was on the part of the defendants to prove that there had been. It was assumed that the jury might infer from the conduct of Hughes in this suit that there had been. So far as we can discover, it was not insisted that Hughes would be estopped by his intervention. It was simply put to them to say, why did Hughes claim this land in this suit as the property of the Millards only? Was he intervening for the benefit of himself or them only, or for the benefit also of Glasscock? Is his act consistent with the fact of a partition, and can you infer that fact from it? If the jury might not put this construction upon these facts in connection with other facts in the case, the proof in regard to this intervention should not have been suffered to go before them. If they could, while it was certainly proper to instruct them that the fact of Hughes' intervention in that suit was not of itself an estoppel, and that in law the recovery by one tenant in common inures to the benefit of all, yet it was not proper to charge them in that connection, in effect, that whatever conclusion they might draw from the acts of Hughes, it should go for nothing, unless it was shown that Glasscock was mislead, or influenced or deceived by it, and that he had in consequence acted differently from what he would have done. The doctrine of estoppel had nothing to do with the case.

So, again, in reference to the effect of the sales made by Glasscock, the judge says:

"But it is said that Glasscock has deeded away by spe-

cific metes and bounds certain portions of these lands on Brushy, and that the making of these deeds and the spreading them on the records of the county were acts in hostility to his co-tenants, and his co-tenants were bound to take notice of them.

"The plaintiff is not disputing this to the extent of asking that the lands thus sold should be disturbed, but says, let it be a severance to the extent of those deeds; but it must not go beyond that. And I charge you that a deed to a part, by specific metes and bounds, cannot be regarded as evidence of a severance beyond the boundaries mentioned in the deed; and the party entering under such deed, if he did enter and claim, in hostility to everybody else but himself, that hostile claim could not be extended beyond the boundaries of his deed.

"And I charge you that the making of a deed to a specific part is not an act of hostility as to the balance of the tract."

Now it is true that the deed of one tenant in common to a part of the common estate by metes and bounds is not a severance beyond the boundaries mentioned in the deed, and that the making of such deed is not of itself an ouster of the co-tenant; but bearing in mind the leading issues in this case, whether there had been an agreement for partition between Glasscock and his co-tenants, this charge was well calculated to disparage the defendant's evidence. It was, in effect, to instruct the jury that they should attach no importance to these acts of Glasscock in disposing of the land, considered of themselves or in connection with the other circumstances in the case, as evidencing a partition.

But there is another light in which this case presents itself to us which seems to have been overlooked upon the trial, and by recurring to which it will be seen that the charge of the court in this case did not fully and fairly present the case to the jury.

The proof shows, we think, incontestably that the conveyance from Glasscock and Huling to Millard conveyed to him all the interest in the Donahoe headright which then belonged to the firm. That some other party then owned two thousand three hundred and two acres of that claim, and that Glasscock at some time subsequently became the owner of that interest. That it was then an unlocated claim; that a certificate issued for the land to Glasscock, as assignee, for the whole league and labor, and then of that certificate the effect of the transactions between the parties was, that Glasscock owned two thousand three hundred and two acres and Millard or his heirs two thousand three hundred and two acres.

This certificate was merely personal property. It was divisible in its nature. It could be located in separate and distinct portions. If located in one body, the owners would be tenants in common. But either party had the right to sell or locate his part of it without creating a tenancy in common in that with the owner of the other two thousand three hundred and two acre interest. In Farris v. Gilbert, 50 Tex., 356, this right is very clearly recognized. Moore, Ch. Justice, says: "Where one person owns the entire certificate he may have two separate surveys made upon it. If the owner sells one-half of a certificate before the location of any part of it, he must be held to have authorized the location by the purchaser of his interest in a single survey. It would be unreasonable to hold the purchaser bound to incur the expense and trouble of locating and procuring patent upon the entire certificate to make available his portion of it. Nor would it be just or proper to say that he could bind the owner of the other part of the certificate by a location which might be valuable to him but worthless to any one else." Freeman on Co-tenancy, 253, 469; Slade v. Green, Taylor N. C., 111.

Now, as the court in the present case refused all charges

asked by plaintiffs and defendants alike, and undertook to instruct them in the law applicable to the case, we think it was incumbent upon it to submit to them directly the legal effect of this sale of half of the Donahoe certificate, and left it to them to determine, from all the facts and circumstances in the case, whether Glasscock located his half of it for himself or for the benefit of Millard's heirs also; and in this point of view, it was certainly misleading to instruct them that Glasscock's sale of the Donahoe land was not an act of hostility as to the balance of the land. That was for the jury to determine.

It is not necessary further to discuss the charges of the court. Sufficient has been said to show in our judgment that the court erred in those given.

Upon the other points presented in the briefs we need pass no opinion. They will not be likely to again arise.

We are of opinion that the judgment should be reversed and the case remanded.

REVERSED AND REMANDED.

[Opinion delivered December 10, 1881.]