TOM M. POOL v. ELLEN GREER ET AL.

Decided April 28, 1900.

**1. Land Certificate—Location in Part—Locative Interest.**

G. took a transfer of one-half of a land certificate that had been issued to B. for 640 acres, the consideration of the transfer being G.'s agreement to locate the certificate; and having located one-half of it in a separate tract, he returned the certificate along with the field notes to the General Land Office, stating in his letter to the Commissioner that the location he had so made was for the heirs of B., and that he desired the issuance of an unlocated balance certificate for the other half, to be located for himself under the transfer. This latter certificate G.'s brother located on land adjoining other lands owned by G., but because of conflict the location failed and the certificate became barred. Held, that the evidence conclusively showed that the first location was made exclusively for the heirs of B., and that the title thereto fully vested in them and their grantee as against G. and his heirs.

**2. Same—Evidence.**

The recital in the field notes of the tract first located, that the location was made for G., was at best but the statement of the officer making the survey, and was not necessarily inconsistent with the idea that in so making the location G. was acting for the heirs of B.

APPEAL from Bosque.  Tried below before Hon. J. M. HALL.

*William M. Knight* and *Robertson & Robertson,* for appellant.

*Lumpkin & Alexander,* for appellees.

CONNER, CHIEF JUSTICE.—This suit involves the title to 320 acres of land located in Bosque County, Texas, by virtue of a certificate to one Leonard Burns for 640 acres.

Appellees, who were the plaintiffs below, claim title through the following transfer to Thomas L. Greer, the deceased husband of appellee Ellen Greer and the father of the other appellees, to wit:

"Know all men to whom these presents may come, that for and in consideration of the sum of $320 to me in hand paid by Thomas L. Greer, the receipt whereof is hereby acknowledged, I, William Burns, have this day bargained and sold, and do by these presents bargain, sell, and convey unto Thomas L. Greer 320 acres of land out of the following described land certificate issued to the heirs of Thomas Burns by the Commissioner of the General Land Office on the 11th day of February, 1858, for 640 acres of land, and No. 3/33.  And I, William Burns, do by these presents warrant and forever defend the title in and to said land certificate unto said Thomas L. Greer, his heirs and assigns forever, against all persons whomsoever they may be.

"Given under my hand this 17th day of July, 1871.

his<br>
"WILLIAM X BURNS."<br>
mark

This instrument was duly acknowledged by the subscribing witness, B. F. Lane, before M. S. Greer, notary public in and for Bosque County, Texas, on the 6th day of December, 1872, and was filed for record on the 8th day of October, 1873, and duly recorded in the deed records of Bosque County, Texas.

The real consideration for the execution of this instrument was an agreement on the part of T. L. Greer to locate and procure patent for the entire 640 acres of land authorized by the certificate.

Appellant's title, if any, was acquired in 1896 and 1897, when he received deeds to the land in controversy from the same William Burns, who executed the above transfer to T. L. Greer, and from one Annie Cranford, claiming as one of the heirs of said Leonard Burns.  No question is made as to the sufficiency of these deeds to confer upon appellant title to the land in controversy, if in fact the heirs of Leonard Burns had title at the time of the conveyances.  But the court below, among other things, found as matter of fact that the land in question was located for said T. L. Greer, and this finding of fact is questioned in appellant's eleventh assignment of error, the judgment for appellees having been rendered thereon.

Briefly stated, the facts are that T. L. Greer lived in Bosque County from 1858 to 1876 or 1877, when he moved to Arizona and there died in 1882. After receiving the transfer from William Burns on July 17, 1871, hereinbefore set out, the land in question was surveyed by virtue of the certificate therein mentioned, the field notes containing this recital: "Field notes of a survey made for Thomas L. Greer of 320 acres of land, said Thomas L. Greer being the assignee of William Burns (sole heir of Leonard Burns), being the quantity of land to which he is entitled by virtue of certificate No. 3/33 issued by the Commissibner of the General Land Office on the 11th February, 1858." '

On March 17, 1874, the survey mentioned having been made in January or February, 1874, patent was duly issued to the heirs of Leonard Burns, the original patent being offered in evidence by appellees. Thereafter, on October 15, 1874, said T. L. Greer wrote to the Commissioner of the General Land Office the following letter, which was sworn to by him:

"MERIDIAN, Bosque Co., Texas, Oct. 15, 1874.
"Mr. J. J. Groos, Com. General Land Office, Austin, Texas:
"Dear Sir.—You will see from the transfer on file in your office that I am the lawful owner of 320 acres of the headright certificate granted to heirs of Leonard Burns, to which I am entitled for locating the other half, which I have done. Please find inclosed $5 for fee for the patent for the 320 acres I have located for the heirs, and send me the duplicate for the other 320 acres which belongs to me, as I want to locate it right away. If I send too much to pay all the fees, remit the change with the duplicate. Can I get patent for the duplicate survey, when made, issued to me as assignee, or will it issue to the heirs on my transfer?

"THOMAS L. GREER,
"Kimbel, Bosque County, Texas."

"The State of Texas, County of Bosque.—Before me the undersigned authority on this day personally appeared Thomas L. Greer, to me well known, who being by me duly sworn on his oath says that the statements contained in the above and foregoing certificate are true and correct.

"Witness my hand and official seal at Meridian, this 15th day of October, 1874.

"J. K. HELTON, Notary Public."

(Seal)

In answer to which the Commissioner wrote the following letter, inclosing the certificate therein named:

"GENERAL LAND OFFICE, AUSTIN, October 20, '74.
"Thomas L. Greer, Esq., Meridian, Texas:
"Dear Sir.—Yours of 15th inst. covering $5 has been received, and I now hand you herewith unlocated balance certificate No. 20/155 for

320 acres, Leonard Burns. Fee $2 paid by your remittance. I also hand you, agreeably to your request, the balance after deducting fee, $3. Very respectfully,

"J. J. GROOS, Commissioner."

It appears that this certificate 20/155 for unlocated balance was first filed in the General Land Office on November 27, 1874, from which it may perhaps be inferred that a survey was made by virtue thereof between the date it was forwarded to T. L. Greer and the date of its said filing. There is no direct evidence, however, of a location of such certificate prior to April 26, 1877, when, at the instance of S. D. Greer, a brother and agent of T. L. Greer, one Siddel located it and made survey by virtue thereof upon land adjoining other lands then owned by T. L. Greer. This location and survey was followed by effort on the part of S. D. Greer, from time to time as late as 1889, to have the same perfected, but by reason of conflicts with other locations, etc., it was lost, and the certificate became barred. It is not made to appear that T. L. Greer in person ever asserted claim or title to the land in controversy. S. D. Greer, however, testified that he held possession for the heirs of T. L. Greer, and that the recitation in certain leases thereof executed by him in 1892 to one Proffett and to appellant, to the effect that he was acting as the agent of the heirs of Leonard Burns, was not true.

We are of opinion that the evidence is not only insufficient to sustain the court's finding, as assigned, but, on the contrary, establishes the fact that the survey and location of the land in controversy was for the sole use and benefit of the heirs of Leonard Burns. "In the absence of evidence sufficient to identify any particular location of a certificate as being for the exclusive benefit of some particular joint owner, it must be treated as made for the benefit of all as tenants in common." See Kirby v. Estell, 78 Texas, 431.

When, however, the location is thus identified, it must be held to confer title on the person for whose exclusive benefit the location is made. See Farris v. Gilbert, 50 Texas, 350; Glasscock v. Hughes, 55 Texas, 461, and case cited supra.

We think the inevitable conclusion to be deduced by the letter and affidavit of Thomas L. Greer of October 15, 1874, is that the land in question was located exclusively for the heirs of Leonard Burns, and not for Thomas L. Greer, and that in thus locating he was but in effect discharging the consideration to be paid for the one-half of the certificate conveyed to him, as evidenced by the transfer from William Burns. We do not think this conclusion can be overborne by the mere recitation in the field notes that the location was made for Thomas L. Greer. At best this was but the statement of the officer making the survey, and was not necessarily inconsistent with the idea that in so locating and making the survey Thomas L. Greer was acting for and on behalf of the heirs of Leonard Burns.

Nor do we think that it can be held that the mere fact that S. D. Greer held possession and claimed the land in controversy for the heirs of T. L. Greer invalidates the title theretofore vested in the heirs of Burns by the location so exclusively made for them. It nowhere appears that this assertion of claim or title by S. D. Greer was by the direction or at the instance of T. L. Greer, the real owner. So far as it appears from the record, as before stated, T. L. Greer, after the date of his said letter, never at any time claimed any right in the land in controversy, nor did any act inconsistent with his location for the heirs of Leonard Burns. The fact that the remainder of the certificate was in effect claimed by T. L. Greer, as shown in his said letter to the Commissioner of the General Land Office, and that it was subsequently located on land adjoining land owned by him, is strongly corroborative of the fact that the location in question was in fact made for the heirs of Leonard Burns. Appellant had the legal title conferred upon the heirs of Burns by the issuance of the patent, and the burden was on appellees to show that the location was for the benefit, jointly or exclusively, of T. L. Greer, and having failed to discharge this burden, appellant was entitled to recover. A contrary conclusion would confer upon appellees the title to land for which no consideration in fact appears to have passed to the legal owners.

We conclude that the judgment below should be reversed and here rendered for appellant, and it is so ordered.

*Reversed and rendered.*

Writ of error refused.