### R. H. KIRBY ET AL. v. C. F. ESTILL ET AL.

#### No. 3074.

1. **Location of Land Certificate—Joint Owners.**—In order to make a location enure to the separate benefit of one of the joint owners of the certificate under which it is made, so as to make him sole owner of the land located, the facts must show that at the time of the location it was intended to be for the benefit of some particular owner, and it must be designated with certainty which one it was, and the act of such location must be consistent with the rights of the other joint owners in the certificate.

2. **Same — Presumption.** — In the absence of evidence sufficient to identify any particular location as being for the exclusive benefit of some particular joint owner, it must be treated as made for the benefit of all as tenants in common.

3. **Vested Rights in Location.**—When by the location of part of a land certificate an appropriation of land is made for the joint owners, no one of the owners of the certificate, without consent of the other joint owners, can affect the ownership of such location.

4. **Same.**—From the location of a part of a certificate owned jointly by two or more parties for their joint use, it follows that the remnant of the certificate and a location of such balance would be owned jointly by such owners.

APPEAL from Tarrant. Tried below before Hon. R. E. Beckham.

This is the same suit, with no important changes, which was recently before this court and decided at the Tyler Term, 1889, reported in 75 Texas, 484.

The suit was commenced in the District Court of Tarrant County by appellants against appellees on the 11th day of February, 1886, and was in the nature of the ordinary action of trespass to try title. The subject matter in litigation was an undivided half interest in a tract of land containing 8,524,765 square varas, patented April 25, 1877, to "James Righley (or Riley), his heirs or assigns," by virtue of headright certificate No.

375, issued by the Board of Land Commissioners of Red River County, March 1, 1838. There is also a special prayer for partition. The several defendants filed separate answers, Estelle and Burgess exhibiting by field notes the portions of said survey claimed by each, and in addition to their plea of "not guilty" pleaded the statutes of three, five, and ten years limitations, improvements in good faith, and in case of their eviction impleaded their vendor and warrantor, J. P. Smith, and asked judgment against him for the amount of the purchase money and interest.

The defendant J. P. Smith by separate answer pleaded the general issue and "not guilty," limitations of three, five, and ten years, and also set out by metes and bounds the two tracts of land situated in Red River County located by virtue of headright certificate No. 375, issued to James Riley by the Board of Land Commissioners of Red River County March 1, 1838, of which an undivided half interest was transferred to W. K. Revere September 10, 1840, the first containing 6,653,390 square varas and the second containing 7,333,333 square varas, and prays the court in the alternative that should it be adjudged that the same were located and patented for the joint benefit of James Riley and W. K. Revere, their heirs and assigns, and that plaintiffs, claiming as purchasers under the heirs of Revere, are entitled to a half interest in the land in controversy situated in Tarrant County, then said defendant Smith alleges that he is the owner in fee simple of an undivided half interest in the said land situated in Red River County, as assignee of James Riley, and prays for a partition of said two tracts of land.

The plaintiffs by their supplemental petition pleaded the disability by coverture of their vendors, who were the heirs at law of W. K. Revere, who at the date of his death in May, 1859, was the owner of an undivided half of the land certificate by virtue of which the lands in controversy were located; and plaintiffs denied the jurisdiction of the court to partition the lands situated in Red River County, and further alleged that plaintiffs have sold all their interests in the lands situated in Red River County and no longer claim any part of it.

The court sustained a demurrer to that part of Smith's answer claiming partition of the lands in Red River County, so that no issue arises in this appeal on that question.

The cause was tried in the District Court of Tarrant County at the January Term, 1888, before a jury, and there was a verdict for the defendants, from which plaintiffs appealed. The cause was submitted to this court at the Tyler Term, 1889, and was reversed and remanded, because this court said that on the case made by the record evidence the court below should have instructed the jury to return a verdict for the plaintiffs. The case was again tried by a jury at the May Term of the District Court of Tarrant County, 1890, which likewise resulted in a verdict for defendants, and judgment was rendered accordingly.

A motion for a new trial and for judgment *non obstante veredicto* was made, which being overruled by the court, plaintiffs excepted and appealed.

This statement is agreed to by the parties.

*Harwood & Harwood* and *Dunklin, Stewart & Turner*, for appellants.— 1. While it is true that when a land certificate is jointly owned by two or more, either of such joint owners may have his interest in such certificate located without also having the interest of the other joint owners located, yet it is not true that where the certificate is owned equally by two or more, and more than half has already been located for the joint benefit of all the owners, that either one of the owners may elect to locate the whole of the remainder exclusively for himself, without the consent of the other joint owners.

2. Where there is no conflict in the testimony upon a given point to be passed upon by the jury, or where the volume of the testimony so greatly preponderates upon one side as that it would be manifestly unjust and unconscionable to disregard the weight of the testimony and decide otherwise, it is error in the court to present the point in its charge, and thus invite the jury to consider it as one that is controverted; but the court in such case should instruct the jury what verdict to find. Kirby v. Estill, 75 Texas, 484; San Antonio v. Lane, 32 Texas, 415; Mitchell v. De Witt, 20 Texas, 299; Parker v. Leman, 10 Texas, 116; Reid v. Reid, 11 Texas, 593; Hedgepeth v. Robertson, 18 Texas, 871; Roddy v. Kingsbury, 5 Texas, 152; Andrews v. Smithwick, 20 Texas, 118.

*Wynne, McCart & Stedman*, for appellees.— 1. The second paragraph of the court's charge to the jury, wherein it instructed the jury that one joint owner of a certificate can locate his part of it separately without also locating the interest of the other joint owner, correctly states the rule of law and was applicable to this case, as the location in Tarrant County was made exclusively for the benefit of the Riley heirs. Glasscock v. Hughes, 55 Texas, 479; Farris v. Gilbert, 50 Texas, 356.

2. There is no evidence that the locations in Red River County were made for the joint benefit of Riley and Revere or those holding under them. The patents issued in 1886 to the Red River County lands and the deed from the Riley heirs to Jernigan and the deed from Jernigan to Smith do not as a matter of fact establish that the locations made in Red River County were for the joint benefit of Riley and Revere or their heirs; nor can it be assumed as a matter of fact that appellee Smith now owns a half interest in the Red River lands, that being a question of fact for the jury. Taylor v. McNutt, 58 Texas, 71; Reed v. Ins. Co., 95 U. S., 23; McMasters v. Miami County, 55 N. Y., 222.

3. The court correctly instructed the jury to the effect that if they be-

lieved from the evidence that Hendricks and Smith located the land in controversy at the instance of the heirs of James Riley or their vendee, William Jernigan, they should find for the defendants, unless they should further believe from the evidence that the location made in Red River County was for the benefit of both Riley and Revere. The location in Tarrant County was made by Smith and Hendricks for the exclusive benefit of the Riley heirs, and when made enured to their benefit and those claiming under them.    Railway v. Irvine, 64 Texas, 529.

HENRY, ASSOCIATE JUSTICE.—On the 1st day of March, 1838, a land certificate was issued to James Riley for a league and labor of land.

On the 30th day of September, 1840, James Riley endorsed upon the back of the certificate a transfer of one-half of the certificate to William K. Revere.

Surveys were made by virtue of this certificate in Red River County, three of them in the year 1870, one for 8,839,169 square varas, one for 7,333,333 square varas, and one for 7,030,970 square varas. Another survey of 2,796,652 square varas was made in the same county in the year 1871.

The first and last of said surveys were found to be in conflict with previous appropriations of the land, and were never matured into titles.

The second one, for the quantity named (7,333,333), and the third one, it having been reduced to 6,653,390 square varas, were lawful appropriations of the land, and the field notes and certificate were returned to the General Land Office, where they remained for many years before patents were issued for said tracts.

On the 23rd day of January, 1872, the heirs of James Riley conveyed their interest in the certificate to William Jernigan. This transfer recited the previous sale of one-half of the certificate to Revere.

On the 25th day of November, 1874, Jernigan conveyed his half interest in the certificate to J. P. Smith. This transfer also recited the previous transfer to Revere.

In the year 1872 a certificate for the unlocated balance—that being the excess over the second and third surveys in Red River County above referred to—was withdrawn from the Land Office by Smith and Hendricks, and they, in the same year, located it on the land in controversy, describing themselves in the application for survey as acting for "the heirs of James Riley."

The record indicates that the surveys in Red River County were made at the instance of one Urquhart, but it does not disclose for whose interest or by what authority, if any, he was acting.

Smith testified, unequivocally and fully, that he made the location in Tarrant County exclusively for the benefit of the owners of the Riley interest in the certificate, which he subsequently purchased.

The whole of the expense of procuring title for the Tarrant County land was paid by Smith and the patent for it was issued in the name of James Riley.

Smith protested that he had no interest in the Red River County surveys and paid nothing for procuring patents for, them. Patents for both of said tracts were procured to be issued to "James Riley and William K. Revere" by a party claiming through Revere.

The land in Tarrant County is of much greater value per acre than that in Red River County.

Judgment was rendered for defendants upon the verdict of a jury.

The plaintiffs once before appealed the cause to this court from a judgment in favor of defendants, which it is admitted was rendered upon substantially the same issues and facts that are now presented.

The judgment was then reversed and the cause was remanded, with an opinion holding that it would have been proper for the jury to have been charged to return a verdict for the plaintiffs. Kirby v. Estill, 75 Texas, 484.

Plaintiffs requested a charge to that effect on the trial from which this appeal was taken, which the court refused to give.

The court charged the jury as follows: "You are instructed, however, that where a certificate is jointly owned by two or more, either of such joint owners may have his interest in such certificate located separately without also having the interest of the other owner located or patented.

"If you believe from the evidence that Hendricks and Smith located the land in controversy at the instance of the heirs of James Riley, and that such location was made for the exclusive benefit of the heirs of said Riley or their vendee, William Jernigan, you will find for the defendants, unless you should further believe from the evidence that the locations heretofore made of said certificate on land in Red River County were made for the benefit of both said Riley and said Revere or their heirs.

"If, however, you believe from the evidence that the land located in Red River County under the certificate in evidence by one J. M. Urquhart was by said Urquhart located for the benefit of said Riley or his heirs, or for their benefit jointly with the heirs of said Revere, or that said Riley's heirs, assignees, or vendees claimed an interest in the land so located in Red River County, then said heirs or their vendees could not renounce their interest in such location and locate the remainder to the exclusion of the said Revere or those claiming under him, and in that event you should find for the plaintiffs one-half of said land described in the petition."

In Farris v. Gilbert, 50 Texas, 356, Chief Justice Moore says: "Where one person owns the entire certificate he may have two separate surveys made upon it. If the owner sells one-half of a certificate before the location of any part of it, he must be held to have authorized the location by the purchaser of his interest in a single survey. It would be unreasonable to

hold the purchaser bound to incur the expense of locating and procuring patent upon the entire certificate to make available his portion of it. Nor would it be just or proper to say that he could bind the owner of the other part of the certificate by a location which might be valuable to him but worthless to any one else."

This doctrine was repeated in the case of Glasscock v. Hughes, 55 Texas, 479, and it is unnecessary for us to say that it meets with our approval, as in the opinion in this case on the former appeal the following language relating to the identical question was used: " While such is correct as an abstract proposition of law, it was not applicable to the facts proved in this case."

While a land certificate owned by more than one person may be separately located by each particular owner for his individual benefit, it may also be located for the joint benefit of all of the owners, so as to make them own the land located as tenants in common.

In order to make a location enure to the separate benefit of one of the joint owners, so as to make him sole owner of the land located, the facts must show that at the time of the location it was intended to be for the benefit of some particular owner, and it must be designated with certainty which one it was; and the act of such location must be consistent with the rights of such owner in the certificate.

In the absence of evidence sufficient to identify any particular location of a certificate as being for the exclusive benefit of some particular joint owner it must be treated as made for the benefit of all as tenants in common. When the facts attending a location, or the want of evidence to the contrary, are such as to make the location enure to the benefit of all of the owners of the certificate and constitute them tenants in common of the land, that relation can not be subsequently abandoned by one of the parties without the consent of his cotenants. At least it can not be done without an abandonment of that location.

The record contains no evidence whatever even tending to show that in making the Red River County locations it was intended only to appropriate the Revere interest in the certificate. It does not indicate that the owner of the Revere interest, any more than the owner of the Riley interest, caused those locations to be made.

It does not show for whom Urquhart was acting in causing the locations and surveys to be made. It does not disclose that he had any interest in or agency about the location of the certificate.

In such a case the locations and surveys enure to the benefit of the owners of the certificate in proportion to their respective interests in it.

The evidence not only fails to affirmatively show an appropriation of the Revere half of the certificate to the Red River County land, as it must do before his assignees can be held to have become the sole owners of that land, but it conclusively shows that it was not done.

In the first place, the whole of the certificate, not half of it, was located in Red River County, near the same date and apparently by the same person. In the second place, no attempt to divide it into two equal parts was made.

The failure to secure patents upon the original surveys did not result from their being intentionally abandoned, but by its turning out, without design, that a portion of the land had been previously appropriated.

The two surveys retained in Red River County were not the Revere half of the certificate, but were considerably over one-half. ·

The Red River County surveys show neither a division in fact nor an attempted division of the certificate between the joint owners thereof.

The evidence with regard. to the Red River County lands leads to but one result, that is, that they belong to the owners under Riley and under Revere jointly. It necessarily follows that the remainder of the certificate located in Tarrant County belonged to them jointly. Smith owned and could have located one-half of that exclusively for himself, but, instead of doing that, he located the Revere half of it also, and the jury should be instructed that the evidence shows that plaintiffs own an undivided one-half interest in the land.

Under the charge that was given the evidence demanded a verdict in favor of plaintiffs for an undivided one-half of the land, and the one returned should have been set aside.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*

Delivered November 28, 1890.