## J. P. SMITH V. C. F. ESTILL ET AL.

### No. 191.

**1. Recitals—Privies in Estate.**

Subsequent purchasers are charged with notice of recitals in the chain of title; and they can not be innocent purchasers as against parties whose interest appears in the chain of title. See example............................ 269

**2. Possession—Limitation.**

Evidence that at a stated time the defendant had the land in controversy fenced, while evidence of possession, is insufficient under the statutes of limitation. The testimony should show the facts constituting possession, and that it has been continuous and adverse .......................... 270

**3. Limitation—Payment of Taxes.**

Payment of taxes is capable of definite proof by resort to the records of the proper offices; and while it may be proved otherwise, the evidence should show the fact with reasonable certainty ............................... 270

**4. Rights of Part Owners in Land Certificate.**

Each owner of part of a land certificate has the right to locate his part of such certificate and to ownership in severalty in his part so located. One part owner can not bind another by adopting a location and survey made by neither ...................................................................... 271

**5. Ratification.**

To constitute a ratification, it must appear that the acts relied upon were done with a full knowledge of all the facts, and with intent to adopt the un- authorized act in question. Without such knowledge a ratification does not exist....................................................................... 271

**6. Case in Judgment.**

Jernigan bought of Riley's heirs one-half of a league certificate. It appearing that neither Jernigan nor his vendees knew that a part of the certificate had been already located without authority, then Jernigan had the right to locate his half of the certificate and hold the land so located in severalty.. 271

**7. Cases Discussed.**

Kerby v. Estill, 75 Texas, 489, and Kirby v. Estill, 78 Texas, 426, discussed and effect limited................................................................. 272

ERROR to Court of Civil Appeals for Second District, in an appeal from the District Court of Tarrant County.

The opinion sufficiently sets out the facts. The errors complained of in application for writ of error are here given:

1. Our Court of Civil Appeals erred in its opinion in this case in holding that the evidence on the last trial did not make a different case from the case as formerly decided by the Supreme Court.

2. Our said Court of Civil Appeals erred in overruling the first as- signment of error made by your petitioner, and holding that the court below did not err in instructing the jury on all of the evidence intro- duced in this cause to find a verdict for the plaintiffs, Kirby and Chambers, for one-half of the land sued for by them.

3. Our Court of Civil Appeals erred in not sustaining appellant's first assignment of error, for that the evidence in this cause tended to show that Burgess and Estill were innocent purchasers of the legal title to said land, through a regular and consecutive chain of title from the heirs of James Riley, without notice of the title of the plaintiffs or any one through whom they claim; the presumption being that when the land was patented to James Riley, notwithstanding the transfer by James Riley to Revere, that James Riley had reacquired such title, or that the patent would not have issued to him. Wimberly v. Pabst, 55 Texas, 587; Howard v. Stubblefield, 79 Texas, 3.

4. Our Court of Civil Appeals erred in not holding that the patent issued to James Riley vested in his heirs the legal title to said land, and that the evidence in said cause was not sufficiently conclusive in favor of Kirby and Chambers for the court to instruct the jury that such legal title was held by Burgess and Estill in trust for the said Kirby and Chambers.

5. Our said Court of Civil Appeals erred in not holding that the Court below erred in charging the jury to find for the plaintiff one-half of the land sued for, because it was in fact sustaining a demurrer to the evidence offered by the defendant upon the plea of laches, stale demand, and the statute of limitation, which evidence was sufficient to bar Mrs. Secrest of one-fourth of the land sued for. Howard v. Stubblefield, 79 Texas, 4, 5.

6. Our Court of Civil Appeals erred in not sustaining plaintiff Smith's seventh assignment of error, and in overruling the same for reasons herein before given; and in not holding that said assignment of error was well taken, and that if the Red River County locations of the James Riley certificate were void at the time Jernigan purchased from the Riley heirs, and had never been ratified by any one through whom Burgess and Estill claimed, then there was no reason why Jernigan did not have the right in 1872 to locate one-half of said certificate for his own exclusive use and benefit, so as to make him the owner in fee simple of said location; and the court below erred in not submitting these questions to the jury, as requested by the defendant, Smith.

7. The Court of Civil Appeals erred in its opinion in saying that there was no other evidence introduced on the trial of this cause before the District Court, from which this appeal was taken, which in any material respect altered or changed said cause, and in overlooking the new testimony offered by your petitioner as herein before set out; and in not noticing the new testimony of W. M. McGaughey, Commissioner of the General Land Office; and in not noticing the testimony upon the question of limitation and stale demand; and in sustaining the court below in its charge to the jury on all of the evidence, on all of the issues made in said cause, to find for the said plaintiffs, Kirby and Chambers.

8. Our said Court of Civil Appeals erred in holding that the District Court did not err in refusing to allow Smith to introduce a certified copy of Chambers' petition and citation, as complained of in said Smith's fifth assignment of error, for the reasons herein before given.

*A. M. Carter* and *R. M. Wynne*, for plaintiff in error.—1. The evidence on the trial of this cause was not conclusive that the locations made of said James Riley's certificate in Red River County were made for the joint benefit of the Revere heirs and the James Riley heirs. On the other hand, the evidence was that these locations were made by a stranger to the title, for his own benefit, and his acts in so locating said certificate were never ratified by any of the James Riley heirs or any one claiming under them. The evidence was clear that the Red River County locations were void when the Riley heirs sold to Jernigan and when Jernigan sold to Smith, and that the location on the land by Smith was for the exclusive benefit of those claiming the Riley heirs' interest therein; that the plaintiff, R. H. Kirby, alone procured the patents to issue on the void Red River County locations, and by so doing did not and could not make the other co-owners joint tenants in said lands against their wish, but made the same his own land and locations. Beatty v. Masterson, 77 Texas, 168; Glasscock v. Hughes, 55 Texas, 479; Farris v. Gilbert, 50 Texas, 356; Adams v. Railway, 70 Texas, 252; Galt v. Galoway, 4 Pet.

2. The court erred in not allowing Smith to introduce in evidence the certified copy of plaintiff E. S. Chambers' petition, as shown by bill of exceptions.

Defendant Smith offered to read in evidence a certified copy of a petition filed in the District Court of Red River County, by this plaintiff, E. S. Chambers, against J. P. Smith, in which petition Chambers was suing and claiming in trespass to try title to the land in Red River County, located by virtue of the James Riley headright certificate; said suit was filed in August, 1891, together with a citation requiring Smith to appear and defend said cause at the October Term of the District Court of Red River County. Plaintiffs objected to the introduction of said petition and citation, because irrelevant and immaterial, and that Chambers could not by bringing a suit in Red River County prejudice the rights of the plaintiffs in this cause. The court sustained the objection and refused to allow the certified copy of the petition and citation to be read, to which defendant Smith excepted. Battle v. John, 49 Texas, 210, and authorities there cited.

*T. M. Harwood* and *Hunter, Stewart & Dunklin*, for defendants in error.—The evidence in this case did not show that the locations made by virtue of the James Riley certificate in Red River County were for the exclusive benefit of the heirs of W. K. Revere. On the contrary,

the evidence showed that said locations were not made at all for the Revere heirs or those claiming under them; and the evidence showing plaintiffs (appellees herein) to be the owners of an undivided one-half interest in and to the James Riley certificate number 375, by virtue of which the land in controversy was patented, it was the duty of the court to charge the jury to find for plaintiffs said one-half interest in said land. Kirby v. Estill, 75 Texas, 484; Kirby v. Estill, 78 Texas, 426.

*A. A. Henderson*, for Burgess and Estill, defendants in error.

*A. M. Carter* and *R. M. Wynne* each filed an argument for plaintiff in error.

BROWN, ASSOCIATE JUSTICE.—This suit was instituted in the District Court of Tarrant County, in 1886, by R. H. Kirby and E. S. Chambers, against J. P. Smith, and others claiming title under him, to recover one-half of a survey of land made by virtue of certificate number 375, granted by the board of land commissioners of Red River County in 1838 to James Riley, for one league and one labor of land. September 30, 1840, James Riley, by transfer indorsed upon the certificate, transferred one-half of it to William K. Revere, under whom plaintiffs claim title as follows: Revere died in 1859, leaving a wife and two daughters, Emily J. and Nancy Revere. It does not appear from the evidence whether Revere was married when he bought the half of this certificate or not, but at his death it was his property. Mrs. Revere married Washington Secrest in 1871, who died in 1872, there being no children of that marriage. At sometime prior to 1879 (the date not given), Mrs. Secrest, formerly Mrs. Revere, died, leaving the two daughters, Emily J. and Nancy, her only heirs. Emily J. married Joseph H. Whitehead in 1865, and in 1868 Nancy married A. H. Carter; each continued under coverture until February 11, 1875, when they, with their husbands, conveyed to E. S. Chambers all of their right and interest in certificate number 375, issued to James Riley, and their interest in all land theretofore located by virtue of that certificate. February 17, 1885, E. S. Chambers conveyed one-half of his undivided one-half of the certificate and all lands located under it to R. H. Kirby and R. M. Swearengin. On the 3rd day of October, 1885, Swearengin conveyed his interest to Kirby.

Defendants derived title as follows: James Riley died in 1844, leaving surviving him a wife and a number of children, whose names are immaterial, and the wife died in 1865, leaving the children of herself and Riley as her only heirs. Hendricks & Smith, of which firm plaintiff in error was a member, were employed by the heirs of Riley to look up the certificate of their father, and about April 23, 1871, wrote to the Land Office to inquire about it, and received in reply information

that one survey in Red River County of 8,839,169 square varas had been located by virtue of the certificate. Another survey had been made at that time, but the field notes were not in the General Land Office. January 23, 1872, the heirs of James Riley made a transfer of their interest in the certificate and lands located under it to William Jernigan. The transfer contained the following recitals, after giving the names of the heirs: "Have granted, bargained, sold, and conveyed, and by these presents bargain, sell, and convey unto William Jernigan, his heirs and assigns, all our right, title, claim, and interest that we have in and to a certain land certificate described as follows: File 628, Red River class; James Riley 8,839,169 square varas Red River County; certificate number 375, issued by the board of land commissioners for Red River County to James Riley, for one league and one labor of land, March 1, 1838. One-half of said certificate was transferred by James Riley to William K. Revere, September 30, 1840. We the grantors do sell and convey all of our right, title, and interest to the above and foregoing certificate, and we forever release and renounce all title and claim to the land located by said certificate, or that may be located by the same or any part thereof, to the said William Jernigan, his heirs and assigns forever; and we the grantors do by these presents empower and authorize the Commissioner of the General Land Office of the State of Texas to patent the lands located by said certificate to William Jernigan, as assignee of the heirs of James Riley."

December 18, 1872, Smith, plaintiff in error, for Jernigan, as he claims, located or rather had the land in controversy surveyed under the certificate. The field notes were returned to the Land Office in November, 1873.

November 25, 1874, Jernigan transferred to J. P. Smith all of his interest in the land certificate, and all land theretofore or thereafter located by virtue thereof. This conveyance recited the transfer by Riley to Revere.

The patent issued upon this survey to James Riley April 25, 1877. On February 12, 1879, J. P. Smith, by deed duly acknowledged, conveyed 160 acres of the land to S. P. Smith, which was recorded the same day. S. P. Smith conveyed the same 160 acres to C. F. Estill on December 2, 1884, by deed which was acknowledged and recorded on the 25th of February, 1885. J. P. Smith conveyed to C. F. Estill 160 acres of the same survey, by deed dated December 2, 1884, acknowledged and recorded February 25, 1885. J. P. Smith conveyed two tracts of this survey to J. W. Burgess, by deeds dated and recorded as follows: One for 298 acres, dated May 21, 1884, and acknowledged and recorded June 14, 1884; and the other for 842 acres of this survey and other lands, deed dated October 25, 1884, acknowledged and recorded October 27, 1884.

The court instructed the jury to find for the plaintiffs one-half of the land in controversy, which they did, and judgment was so entered, from which judgment J. P. Smith appealed to the Court of Civil Appeals, which affirmed the judgment of the District Court in that particular.

Plaintiff in error presents several grounds of objections to the judgments of the District Court and the Court of Civil Appeals, but we need notice only two, which are in substance as follows:

First—That the court erred in instructing the jury to find in favor of the plaintiffs for one-half the land, for these reasons:

1. Because the evidence was sufficient to raise the issue that Smith located the land in controversy for William Jernigan, and that he had the right to so locate it and acquire title to the land for Jernigan alone.

2. That there was evidence which tended to show that Estill and Burgess were innocent purchasers for value, without notice of plaintiffs' claim.

3. That there was evidence sufficient to go the jury on the question of limitation in favor of the defendants as against the interest derived through Mrs. Secrest, formerly Revere.

Second—That the court erred in refusing, upon objection of plaintiffs, to permit defendant Smith to introduce in evidence the copy of petition in suit in District Court of Red River County, in the case of E. S. Chambers v. J. P. Smith, for land located in that county under the same certificate.

The first objection is not well taken so far as it is based upon the second and third reasons assigned. The transfer from the heirs of Riley to Jernigan, under which all the defendants claimed, recited that half the certificate had been conveyed by James Riley to W. K. Revere. Defendants were bound to take notice of this recital in their chain of title. James Riley was dead when the certificate was transferred to Jernigan, and there was no ground to believe that Riley had reacquired the title of Revere between the transfer to Jernigan, in which the recital was made, and the issuing of the patent.

There was no evidence to show whether or not Revere was married when he acquired the right to half of the certificate, but the evidence does show that at the time of his death the title was in him, and in the absence of proof to the contrary, the law presumes that it was community property. Mrs. Revere was under this state of facts entitled to one-half of the interest conveyed to Revere, which at her death descended to the two daughters under whom plaintiffs claim title. If limitation began to run in the life-time of Mrs. Secrest, the mother, it continued, notwithstanding the coverture of the daughters; but we think the proof failed to show such continuous possession as is necessary to establish this defense. Smith says, that "the land was fenced, I think, in 1874; that was when I purchased it." The evidence should

establish the facts which constitute possession, and must show that it has been continuous and adverse. Admitting that the statement that the land was fenced is sufficient to show possession, there is nothing to show that the fence continued for a year or a month. The evidence as to the payment of taxes by Smith was very indefinite. The payment of taxes is capable of definite proof by resort to the records of the proper offices; and while it may be proved otherwise, the evidence should show the fact with reasonable certainty.

The uncontradicted evidence shows that there were located in Red River County under the certificate number 375, issued to James Riley, four different tracts of land, and the field notes show that each of the surveys was made for J. M. Urqhart. One survey of 8,839,169 square varas was made April 21, 1870, and the field notes returned to the Land Office May 9, 1870. It was within the M. E. & P. R. R. reservation, and afterwards abandoned. Another survey of 2,796,652 square varas was made July 5, 1871, and field notes filed in Land Office January 27, 1872. This survey covered an older survey, and was abandoned also. It does not appear from the evidence who caused the foregoing surveys to be made for Urqhart.

A third survey was made for 7,333,333 square varas, surveyed June 21, 1870, and filed in the General Land Office May 20, 1871. This was afterwards corrected and patented for 6,653,350 square varas. The fourth survey was for 7,030,970 square varas, made July 19, 1870, and field notes filed in the General Land Office January 27, 1872. The two last named surveys were made at the instance of Van Wey for J. M. Urqhart, under claim of title to the certificate by Urqhart. The last two surveys were patented at the instance of R. H. Kirby, January 13, 1886, in the names of Riley and Revere.

The two first named surveys being void can not be considered as affecting the rights of the Riley heirs, because they did not constitute an appropriation of any part of the certificate. The other surveys, if located without authority from the heirs of Riley, were not binding upon them, and they had the right to disregard them, and to locate their part of the certificate for themselves; or they might adopt the surveys and claim the land so located. Beaty v. Masterson, 77 Texas, 171; Seibert v. Richardson, 86 Texas, 295; Roller v. Reed, 26 S. W. Rep., 1060; Glasscock v. Hughes, 55 Texas, 479; Ferris v. Gilbert, 50 Texas, 356; Parker v. Spencer, 61 Texas, 165; Wilson v. Simpson, 68 Texas, 310; Kirby v. Estill, 78 Texas, 431.

The heirs of Revere or their assignee had an equal right with the heirs of Riley to ratify and adopt the surveys made in Red River County, or to disregard them and make a location for themselves, but they could not by any act of theirs bind the other joint owners of the certificate, unless authorized so to do. Ferris v. Gilbert, 50 Texas, 356. In the case last cited the court said: "If the owner sells one-half of

the certificate before the location of any part of it, he must be held to have authorized the location by the purchaser of his (the assignee's) interest in a single survey. It would be unreasonable to hold the purchaser bound to incur the expense and trouble of locating and procuring patent upon the entire certificate to make available his portion of it. Nor would it be just or proper to say that he could bind the owner of the other part of the certificate by a location which might be valuable to him, but worthless to any one else." The rights existing under such a transfer must be reciprocal, so that each owner of an undivided interest in the certificate may locate for himself, and neither could bind the other by a location of the whole, without his consent. It follows, that neither could bind the other by adopting a location and survey made without authority of either. No wrong could be done to the heirs of Revere under this rule, for, as said before, they had the same right to locate for themselves if they had not authorized the locations made by Urqhart.

It is claimed that the Riley heirs ratified the act of Urqhart in locating the certificate in Red River County. To constitute a ratification, it must appear that the acts relied upon were done with a full knowledge of all the facts, and with intent to adopt the unauthorized act in question. City of Laredo v. McDonnell, 52 Texas, 528. Whether or not the acts of the heirs of James Riley in selling the certificate to Jernigan amounted to a ratification of the locations and surveys made in Red River County depends upon the facts, and can not be derived from the language of the transfer alone. If the Riley heirs knew of the locations, and intended by their transfer to adopt them and to convey this land to Jernigan, it might work an estoppel upon them and their assignee. If, however, they did not know of the locations and surveys at the time they made the transfer, then it could not be held a ratification. Otherwise one could be said to ratify that which he did not know to have been done, and to convey that which he did not know to exist. The question of ratification is one of fact for the jury.

If the surveys in Red River County were made by authority of and for the benefit of the owners of the certificates, or if made without authority of the Riley heirs and ratified by them with such knowledge as would bind them, then Jernigan, as their assignee, had not the right to appropriate the unlocated balance of the certificate to himself exclusively, but the survey made would inure to the benefit of all the joint owners. If, however, under the principles of law announced above, the Riley heirs at the time of their transfer had the legal right to locate their half of the certificate for themselves, this right vested in Jernigan by the transfer, and if the evidence shows that Smith, as agent for Jernigan, did locate the land in controversy for Jernigan alone, intending at the time to appropriate thereby Jernigan's half of the certificate, and not to locate for the other owner of the certificate, this loca-

tion would vest title to the land in Jernigan alone, to the exclusion of plaintiffs.

This is the third time that this case has been before this court. In the two former appeals Kirby was appellant from judgments against his right to recover, and upon each appeal the judgment of the District Court was reversed. Kirby v. Estill, 75 Texas, 489; Id., 78 Texas, 426. The Court of Civil Appeals disposed of the case on this appeal upon the idea that it was practically the same case as presented in the former appeals to this court, and therefore that the right of plaintiffs was determined by the former opinions of this court.

An examination of the opinions before delivered will show that in each the decision rested upon the same proposition, that is, that the evidence showed that the two surveys in Red River County, located under the same certificate, were located by authority of and for the joint benefit of the heirs of Riley and Revere.

The first opinion was by Judge Acker, of the Commission of Appeals, and approved by the Supreme Court, in which, after reciting the undisputed facts, it is said the evidence shows, "that the heirs of Riley asserted claim to their interest in the locations made in Red River County; that the entire certificate had been located in Red River County for the Riley heirs and Revere, but a portion being in conflict with prior locations, was floated and located in Tarrant County on the land in controversy." 75 Texas, 487. Upon the second appeal Judge Henry delivered the opinion of the court, in which, upon the same point, it is said: "In the absence of evidence sufficient to identify any particular location of a certificate as being for the exclusive benefit of a particular joint owner, it must be treated as made for the benefit of all as tenants in common. * * * The record contains no evidence whatever even tending to show that in making the Red River County locations it was intended only to appropriate the Revere interest in the certificate. It does not indicate that the owner of the Revere interest, any more than the owner of the Riley interest, caused those locations to be made." It (the record) does not show for whom Urqhart was acting in causing the locations and surveys to be made. It does not disclose that he had any interest in or agency about the locations of the certificates. In such a case the locations and surveys inure to the benefit of the owners of the certificates in proportion to their respective interest in the certificates."

It will be observed, that in the opinion delivered on first appeal it is said that the evidence shows that the Riley heirs claimed their interest in the Red River County locations, and that those locations were made for the heirs of Riley and Revere jointly; and in the opinion upon second appeal the court presumes, in the absence of evidence, that the locations were made by Urqhart for the benefit of all the owners of the certificate. As now presented to this court, there is evidence

to the effect that the heirs of Riley did not know of these locations when they made the transfer to Jernigan, and the evidence is uncontradicted that the locations were made for Urqhart in his own right as owner of the certificate. The change in the evidence makes this a case essentially different from that presented to the court heretofore, and requires the application of different rules of law in determining the rights of the parties.

Upon the assignment that the court erred in excluding the copies of petition and citation in the suit of Chambers v. Smith, in Red River County, the record is not so clear as would justify a reversal of the judgment on that account. But as we will reverse on another ground, we think it proper to say, that if at the institution of the suit in Red River County Chambers was still owner of an interest in the land in controversy the copies ought to have been admitted as to him, as a circumstance in connection with the evidence of his acts of procuring the patent on those surveys. This evidence, however, could not affect the rights of Kirby, unless he at that time claimed a part of that land in Red River County, or was in some way connected with the institution of that suit.

For the error in the charge directing the jury to find for the plaintiffs, the judgments of the District Court and the Court of Civil Appeals are reversed, and this cause is remanded to the District Court for further proceedings in accordance with this opinion.

*Reversed and remanded.*

Delivered November 5, 1894.