GALLUP v. RUNNELS et al.     (No. 256.)

(Court of Civil Appeals of Texas. Beaumont. Nov. 26, 1917.)

1. ADVERSE POSSESSION ⬧═══86—HOLDING UNDER DEED — PAYMENT OF TAXES — CONCURRENCE.

To constitute adverse possession under the five-year statute of limitations payment of taxes must be concurrent with the holding of the land under a deed.

2. ADVERSE POSSESSION ⬧═══95 — PAYMENT OF TAXES—CHARACTER OF PROOF.

Payment of taxes should be shown to a reasonable certainty in every case where title is claimed under the five-year statute of limitations.

3. ADVERSE POSSESSION ⬧═══95—PAYMENT OF TAX—SUFFICIENCY OF EVIDENCE.

Evidence *held* insufficient to show concurrent payment of taxes for any consecutive five years by one claiming by adverse possession.

Appeal from District Court, Angelina County; L. D. Guinn, Judge.

Suit by Jessie Runnels and others against David L. Gallup. Judgment for plaintiffs, and defendant appeals. Reversed and remanded.

Terry, Cavin & Mills and Jno. G. Gregg, all of Galveston, and Mantooth & Collins, of Lufkin, for appellant. Wright & Jordan, of Lufkin, F. O. Fuller, of Cold Springs, and T. W. Jordan, of Lufkin, for appellees.

BROOKE, J.     This suit was originally filed by the appellees, Jessie Runnels and Ella Clingman, against appellant for a partition of the Henry Stagner league of land in Angelina county, it being alleged in the petition that the plaintiffs were the owners of an undivided one-tenth interest in one-third of said league and that appellant owned the remaining nine-tenths. Afterwards, Annie Merrell, joined by her husband J. W. Merrell, and A. J. Murray, intervened, and alleged that they were entitled to one-twentieth interest in an undivided one-third of the Stagner league. Appellant answered by plea of nonjoinder of necessary parties, general denial, plea of not guilty, and special answer alleging that he was the owner of all of the Stagner league except a tract of 320 acres and a tract of 137 acres, particularly described in his answer as to which two tracts he disclaimed. As to all of the remainder of the league, except said two tracts as to which he disclaimed, appellant pleaded that he held title to it and was the owner of it by virtue of a regular chain of title from the sovereignty of the soil, and also pleaded the three, five, and ten years' statutes of limitation

and filed a cross-action praying for the recovery of the land claimed by him against the plaintiffs and interveners. In answer to the cross-action filed by appellant, plaintiffs pleaded the five and ten years' statutes of limitation. The case was submitted to the jury on special issues, and, on the answers of the jury, judgment was rendered in favor of the plaintiffs, Jessie Runnels and Ella Clingman, against appellant for 147.6 acres, and in favor of the interveners, A. J. Murray and Annie Merrell, against appellant, for 59.5 acres of· an undivided one-third of the Stagner league. After appellant's motion for judgment had been overruled, appellant filed his motion for new trial in due time, which was overruled, and the case has been properly brought to this court by appeal.

There are several record chains of title to the Stagner league, as follows: (1) A chain beginning with a deed from Henry Stagner to Isaac W. Burton, dated March 13, 1837. Appellant holds all ·of the title coming through this chain. (2) A chain beginning with a deed from Henry Stagner to Arthur Jones, dated March 20, 1847. Appellant holds all of the title coming through this· chain. (3) A chain· of title originating with S. F. Everett. Appellant holds all of the title coming through this chain. (4) A chain of title originating with a deed from Sarah Stagner, Elizabeth Salina Stagner, and Roderick Sibley Stagner, to Franklin D. Bodenhamer, dated November 24, 1859, conveying the entire league. Bodenhamer, the grantee in this deed, on February 12, 1861, conveyed one-third of his interest in the league to Jessie Runnels, and ·on August 26, 1881, J. W. Runnels and others, as heirs of Jessie Runnels, the grantee in the last-mentioned deed, conveyed the land in controversy to John Albert Chrystie. Appellant holds all of the title· which vested in Chrystie by this· last-mentioned deed. Appellees and interveners are other children and grandchildren of Jessie Runnels, who .was the grantee in the deed from Bodenhamer, and base their right to recover on the vesting of title in their father or grandfather, Jessie Runnels, as against the other superior record titles now held by appellant, by virtue of the five years' statute of limitation; this being the only statute of limitation submitted to the jury in favor of appellees. Appellant claims title to all of the Stagner league, except the 320 and 137 acre tracts above ·referred to by virtue of his record titles above mentioned.

The first, second, and third assignments of error will be considered together, as follows:

"(a) Because the court erred in failing and refusing to give in charge to the jury the defendant's special charge No. 1, which was as follows: 'Gentlemen of the jury, you ·are instructed to return a verdict for the defendant, David L. Gallup.' Because the evidence in this· case failed to show any title in the plaintiffs or the interveners and failed to show that the ancestors of the plaintiffs and interveners did for

any period of five consecutive years, while the statute of limitation was in effect in this state, use and cultivate the lands described in the plaintiff's petition claiming the same adversely and paying the taxes for said period, all as is more fully shown by defendant's bill of exception No. 1.

"(b) The court erred in submitting to the jury special issue No. 1, which was as follows: 'Did the plaintiff Jessie Runnels, and interveners, the ancestors of plaintiffs and interveners, use and cultivate the lands described in plaintiff's petition for five years consecutively before Mr. Runnels and others made a deed to the land to other parties?' Because there was no evidence in this case to show that the ancestors of the plaintiffs and interveners did for any period of five consecutive years, while the statute of limitation was in effect in this state, use and cultivate the land described in plaintiff's petition, claiming the same adversely and paying taxes upon the same.

"(c) Because the finding of the jury in answer to special issue No. 1, in the affirmative is contrary to the evidence in this case, in this, that there was no evidence to show that the ancestors of the plaintiffs and the interveners used and cultivated the land described in plaintiff's petition and paid the taxes upon the same during any period of five consecutive years while the statutes of limitation were in effect in this state."

Among other propositions advanced by the appellant under the above assignments will be found this:

"The evidence was insufficient to prove payment of taxes on the land claimed by the predecessors in title of appellees during the period when it is claimed their limitation title matured, and the payment of such taxes being a necessary requisite to the sustaining of title under the five years' statute of limitation, the court should have granted appellant's motion for new trial."

We have carefully gone over the record, which is not a very large one, and we are compelled to the conclusion that the assignments must be sustained.

The testimony with reference to the payment of taxes during any consecutive period of five years can be stated in a few words, and is as follows:

J. F. Runnels, a witness for the appellees, testified:

"My name is J. F. Runnels, and I live down here—well, I call it five miles from Huntington. That's in Angelina county, Tex. I have lived in this county and down in that section for 65 or 66 or 67 years, and I am going on 70 years old now.

"I am acquainted with the Henry Stagner league of land; I was raised on it. I was personally acquainted with Jesse Runnels, Sr. He was my father; I ought to have been acquainted with him, I guess. My father lived on the Henry Stagner league of land; he owned one-third of it, you understand, himself. I could not tell you just exactly what year he moved onto this league of land, but he settled there the first place when he moved to this county. That was the first place he settled. I could not swear to the exact date he moved to this county, but it was along about 1855 or 1856, somewhere along about that time. He was living on it at the time he bought it from Bodenhamer, and he continued to live on it up until his death. I think he died four years after the Civil War, is my best recollection about the time he died. He died in December, and, if he had lived until the next April or May, it would have been four years after the Civil War closed.

I think the war closed in April or May. I would guess that my father died along in 1868 or 1869, somewhere along there; but I could not be positive as to that date, you understand. He died right on that survey of land, on the Henry Stagner league that he was occupying as his home.

"My mother was living at the time my father died. She was then living on the Stagner league. She continued to occupy that place after my father's death. I think she lived some 10 or 11 years after my father's death. Well, I mean she occupied the Stagner place 10 or 11 years after my father's death, but I would have to count up the crops really to tell about that. I think she stayed on that place 11 years after my father's death, and he died on the place. As to who occupied the place after my mother left it, we sold out to Townsend and Branch. My mother lived on that place until some of the heirs sold out. I think she stayed there a right smart little while after they sold out. I know that she was living on the place at the time some of the heirs sold out to Townsend and Branch.

"During the time my father lived on the Henry Stagner land he claimed it, and after he died my mother had possession of it, and me and her claimed it then. I was one of the heirs that sold out. After my father died my mother occupied the place, and my mother paid the taxes on that place after my father died for a long time; she and the children paid the taxes for some time after my father died. I don't think there were any back taxes on it unpaid."

In the case of Snowdon v. Rush, 69 Tex. 593, 6 S. W. 767, it was held by our Supreme Court that, in an action for the recovery of real estate, a defendant who has maintained five years' adverse possession under a duly registered deed, with concurrent payment of taxes, may, under the Revised Statutes, plead the bar of the statute, but he is not entitled to the privilege if the possession and payment of taxes have not been concurrent.

In the case of Donlon v. Lyons, 15 S. W. 578, it was decided by our Supreme Court, Chief Justice Stayton handing down the opinion, as follows:

"The only evidence tending to show payment of taxes by Mary Donlon and the defendant was found in the testimony of defendant's wife, who states that: 'After the death of Mike Donlon, she saw his surviving wife, Mary, give money to Patrick Donlon, to pay the taxes for her on the lot, and he brought back a receipt for the taxes, and delivered it to Mary Donlon; and that her husband, John Lyons, had paid the taxes on same since the death of Mary Donlon.' Plaintiff testified that after his father's death he paid taxes on the lot, which is situated in this city. This evidence does not show what taxes Mary Donlon paid. She may only have paid the city taxes, and the evidence only tends to show that she paid taxes one time. Taxes for the years 1884, 1885, and 1886, were doubtless assessed against the property after the deed to Mary Donlon was made, or, at least for the two former years, became due between the time the deed was recorded and her death, and it was incumbent on defendant to prove that she paid them, and that he paid the taxes for the year 1886, and all succeeding years unless he showed that Mrs. Donlon paid the taxes for 1886. He needed to show payment of taxes for all these years to sustain his plea of limitation, and, having failed in this, judgment should have been entered for plaintiff."

In the case of Smith v. Estill, 87 Tex. 264, 28 S. W. 801, it was held by Judge Brown

that payment of taxes is capable of definite proof by reference to the records of the proper officers, and, while it may be proved otherwise, the evidence should show the fact with reasonable certainty.

[1] We are not unmindful of the fact that there seems to be in the decisions of Texas, on the proposition as to whether or not the payment of taxes should be concurrent, somewhat unsatisfactory readings of the opinions of the Supreme Court. However, we hold in this case that the case of Snowdon v. Rush, from which quotation has been made heretofore, holding that the payment of taxes must be concurrent with the holding of the land under a deed, in order to put the five years' statute of limitation in force, lays down the correct rule.

[2, 3] The testimony has heretofore been set out, and to our minds is not of that definiteness and certainty which should and ought to be conclusive in settling the land titles of this state. As stated in one of the decisions heretofore referred to, payment of taxes can be shown by circumstantial evidence, or can be shown with definiteness by the records, and at least, in our opinion, should be shown to a reasonable certainty in each and every case. We have given this matter a great deal of thought as to what should be a correct conclusion as to the payment of taxes, having, as before said, in mind the somewhat uncertain condition of some of the decisions of the state. However, we believe the decision in this case announces a correct conclusion, and we hope that either in this cause or in some other cause, at an early date, our Supreme Court will take occasion to set this matter at rest in the minds of the bench and bar of this state.

Being of opinion, as we have heretofore said, that the testimony is insufficient to show a concurrent payment of taxes for any consecutive five years, we are of the opinion that the cause must be reversed and remanded to the lower court for a new trial. It is so ordered.