**KRIDER et ux. v. WINTERMANN.**

No. 4674.

Court of Civil Appeals of Texas. Amarillo.

June 28, 1937.

John R. Cox, Lewis Fisher, and C. M. Alderson, all of Houston, for appellants..

Chas. D. Rutta and G. H. Miller, both of Columbus, for appellee.

STOKES, Justice.

This suit was filed in the district court of Colorado county July 8, 1932, by appellee, O. J. Wintermann, against appellants in trespass to try title to 50 acres of land consisting of lots Nos. 14 and 15, in block No. 19, and lots Nos. 3 and 4, in block No. 21, of the subdivision of the P. K. Bartleson survey. Appellants answered by the general issue and by pleading open, adverse, and notorious possession of the land for a period of more than 10 years next preceding the date upon which the suit was filed. By supplemental petition, appellee pleaded that the lots constituting the 50-acre tract in controversy are surrounded by lands claimed and fenced by appellants, and that they had never been segregated or in any manner separated by fence, but were embraced in an inclosure with appellants' other lands, and that no part of said 50-acre tract had been cultivated or used by appellants for agricultural or manufacturing purposes, which facts were set up in bar of appellants' plea under the ten-year statute of limitations.

A jury was impaneled, and at the close of the testimony, upon motion of appellee, the court instructed the jury to return a verdict in favor of appellee, which was done, and judgment entered decreeing the title and possession to appellee, from which appellants perfected their appeal to the Court of Civil Appeals of the First Supreme Judicial District, and, by order of the Supreme Court, equalizing the dockets, the case was transferred to this court.

By their second proposition, appellants assail the action of the court in basing his instructed verdict upon the asserted record title of appellee because, they contend, in the chain of title appear deeds from W. H. Getzendaner et al. to J. R. Westmoreland, and from Westmoreland to George C. Wallace, which purport to convey the land in controversy, but do not cover the property or any part thereof.

The original Bartleson survey consisted of one League and one Labor, and the land involved here is located near the south corner. The lines of the survey run south 48½° west and north 41¾° west, and the southeast one-half was divided into two tracts of 1,125.1 acres each. The deeds questioned by appellants involve the southwest quarter of the entire tract consisting of 1,125.1 acres, and the descriptions given in each of them are by field notes and artificial objects. They begin about the center of the southeast line of the Bartleson survey, in the center of the Frelsburg and Eagle Lake Public road, and run thence south 48½° west, 2682 vrs., along the southeast line of said Bartleson survey to a post on the northeast side of the Eagle Lake and Ramsey Public road, and 22 vrs. north 42½° east of the north boundary line of the right of way of the Southern Pacific Railroad; thence south 41¾° west along the northeast side of said public road, 2,362 vrs., to a stake; thence north 48½° east, 2,690 vrs., to a point in the center of the Eagle Lake and Frelsburg Public road; thence south 41½° east along the center of said public road, 2,367 vrs. to the beginning, containing 1,125.1 acres of prairie land.

It will be noted that the second call in the field notes is south 41¾° west, which slightly varies the course in the line called for in the first call, and proceeds in a southwesterly direction to a point. From this point it takes a northeastern course and proceeds some distance past the terminal point of the first call. From thence it proceeds south 41½° east, 2,367 vrs. and terminates at an undesignated point several hundred varas southeast of the Bartleson survey. If followed literally, the field notes do not inclose any portion of the land in controversy. It will be noted the first call in the field notes designates a post on the northeast side of the Eagle Lake and Ramsey Public road, which is 22 varas north, 48½° east of the north boundary line of the right of way of the Southern Pacific Railroad. If the course be disregarded, the second call carries the surveyor along the northeast side of said public road 2,362 varas to a stake. If this second call in the field notes was north 41¾° west instead of south 41¾° west,

the line would run along the northeast side of the Eagle Lake and Ramsey Public road, as directed, and the 1,125.1 acres in which the land in controversy is situated would be perfectly described. The lines reach each of the four corners and terminate at the beginning point as called for by the descriptions in the deeds. It thus becomes a question of whether or not these two deeds contain sufficient descriptions of the 1,125.1-acre tract to entitle them to be considered as chains in appellee's record title.

There are three plats accompanying the record, one of which is attached to appellants' brief. In two of these plats the Frelsburg and Eagle Lake Public road and the Eagle Lake and Ramsey Public road called for in the field notes in these deeds are plainly shown. The G. H. & S. A. R. R. is, by all three of them, shown to parallel the Eagle Lake and Ramsey road, and is located at the place indicated for the termination of the first call in the field notes. The second call in the field notes directs the course along the northeast side of the Eagle Lake and Ramsey road and, as stated above, if this line were followed, it would lead north 41¾° west instead of south 41¾° west.

It is always the purpose of surveyors and others dealing with land titles and boundary lines to leave signs and records by which their footsteps may be followed. Natural objects, such as rocks, rivers, lakes, and prominent topographical points, have always been used by surveyors in marking their trails, and are considered by them and by the courts as of first importance. Next in the order of dignity come artificial objects, such as trees, stakes, artificial mounds and pits. Also in this class come such objects as public roads, railroads, fences, and the like. Course and distance are generally, if not universally, subordinated in importance to either natural or artificial objects. The reason for such a rule is obvious. Chain carriers are likely to miscount the number of chains and the surveyor may inadvertently enter on his record a course at variance to the one he is following, but natural objects do not change and artificial objects made upon the ground are generally susceptible of relocation or proof by trusted memories.

Chief Justice Marshall, in Newsom v. Pryor, 7 Wheat. 7, 10, 5 L.Ed. 382, is quoted by an early Texas authority in a statement of the rule "that the most material and most certain calls shall control those which are less material, and less certain. A call for a natural object, as a river, a known stream, a spring, or even a marked tree, shall control both course and distance."

It cannot be questioned that artificial objects are more material and more certain than course and distance and, in case of conflict, the former should control. Stafford v. King, 30 Tex. 257, 94 Am.Dec. 304; Thatcher v. Matthews, 101 Tex. 122, 105 S. W. 317, 318; Temple Lumber Co. v. Felts et al. (Tex.Civ.App.) 260 S.W. 228, 230.

It is said in Temple Lumber Company v. Felts, supra: "The rule is well settled that, in locating land lines, calls for natural or artificial objects will control calls for course and distance; that is to say, that calls for course and distance must, in case of conflict, yield to calls for natural and artificial objects."

In Thatcher v. Matthews, supra, Justice Gaines, speaking for the Supreme Court, said: "In Stafford v. King, 30 Tex. 257, 94 Am.Dec. 304, Mr. Justice Smith in a well-considered and very elaborate opinion lays down the rules which should govern in a case of this character, as follows: In case of conflicting calls, the order of dignity and control are: (1) Natural objects; (2) artificial objects; and (3) course and distance. That is to say, calls for course and distance must, in case of conflict, yield to calls for natural objects and to artificial objects, among which he expressly mentions 'stakes'. The principles so announced have since prevailed in this court without any important modification."

Applying these rules to the deeds in controversy, we are impelled to hold that the second call in the field notes must be read "thence north 41¾° west" instead of "south 41¾° west" because, in following the footsteps of the surveyor, we are directed to follow the northeast side of the Eagle Lake and Ramsey Public road, and the testimony shows that such road at this point runs north 41¾° west. If the course as actually recited by the field notes is followed, it leads across the public road and the railroad and on in a southwestern course, leaving the Bartleson survey entirely. By following the artificial object, which is the northeast side of the Eagle Lake and Ramsey Public road, the distance called for in the second call of the field notes, the northwest corner of the 1,125.1-acre tract is reached, and by thence following the third and fourth calls in the field notes, the beginning point as direct-

ed is reached and the 1,125.1 acres is perfectly inclosed. By taking this view, the deeds from Getzendaner to Westmoreland and from Westmoreland to Wallace convey the tracts of land involved in this suit, and appellee's record title is established. There being no evidence in the record to destroy these deeds or break the chain of record title under which appellee claims, except the discrepancy in the field notes, which we have discussed, the trial court committed no error in giving the peremptory instruction in so far as these deeds were concerned. Appellants' second proposition is, therefore, overruled.

■ Under the first and third propositions, appellants assign error of the court in instructing the jury to return a verdict for appellee in face of their plea and proof of limitation and adverse possession. These assignments are based upon the contention that there was, in the record, sufficient evidence of their continuous and adverse possession of the land in controversy over a period of ten years to demand that the case be submitted to the jury and to form a sufficient basis for a verdict in their favor on this phase of the case. Both G. F. Krider and his wife, appellants, took the witness stand, and the substance of their testimony was that about the year 1917 the entire 1,125.1 acres was fenced by them, and that they cultivated between 5 and 10 acres of lot No. 14 in block No. 19, being one of the tracts in controversy, during the years 1917, 1918, and 1919. They testified that, during that time, there was a fence around a portion of the land in controversy, but were uncertain as to who placed the fence there, or when it was built. The testimony showed that the land was not cultivated after the year 1919 and that the fence remained around the tracts and was not removed by them. G. F. Krider testified that the fence remained there until it disintegrated by age and lack of repair. No witness testified to any further occupancy, use, or cultivation of these tracts for any greater length of time or at any other period than the three years mentioned, except its use as grazing land in connection and general inclosure with the balance of the 1,125.1-acre tract, and no witness gave any intimation as to the length of time the separate fence remained around the tracts involved in this case. Appellants do not claim an abundance of testimony in this regard, but base their claim in these assignments upon the proposition that the undisputed testimony showed the fence remained around these tracts until it disintegrated by age and lack of repair. They say that the life of such fence would depend upon the character of wood used as posts, but would certainly stand for a number of years and that, in any event, these facts present material factual questions for jury determination. Neither the nature of posts used in constructing the fence nor the life of posts of any kind of wood was suggested by any witness. The claim of limitation, like any other fact question, when pleaded, must be established by the party pleading it. The record does not make it clear as to the number of acres that were fenced. The kind and character of posts used were not shown, nor was any other testimony presented upon which a jury could have based a verdict to the effect that, for the ten-year period required by law, or even the major portion of it, appellants had the land in controversy or any part thereof inclosed by a fence other than the fence which inclosed the circumscribing tract of 1,125.1 acres.

■ Article 5511, R.S., provides that a tract of land owned by one person entirely surrounded by a tract or tracts owned by another shall not be considered inclosed by a fence which incloses the circumscribing tract, nor shall possession of the larger or circumscribing tract by its owner constitute peaceable and adverse possession, such as is contemplated by article 5510, unless the same, that is, the smaller circumscribed tract, be segregated and separated from the larger tract by fence, or at least one-tenth thereof be cultivated and used for agricultural or manufacturing purposes. If appellants have brought themselves within this statute, they are entitled, not only to have their case submitted to a jury, but to recover the land; otherwise, they are not entitled to recover, and unless they presented some testimony which would make an issue on that question, they were not entitled to have the case submitted to the jury. They have given us no reference to any testimony in the case which shows that they maintained a fence around any portion of the land in controversy for a greater period than three years, or that any part of it was cultivated by them and kept separate from the remaining lands owned by them and circumscribing these tracts for a period of more than three years at most.

We are, therefore, forced to the conclusion that, if they ever complied with the requirements of article 5511 in any respect whatever, it did not cover a period greater than three years. Under the law, this is not sufficient. The statute referred to requires a tenure or inclosure for ten years, and such tenure or inclosure must, under the law, be continuous for the statutory period. Noland et al. v. Weems (Tex.Civ.App.) 141 S.W. 1031; Vergara v. Buck (Tex.Civ.App.) 246 S.W. 697; Smith v. Estill, 87 Tex. 264, 28 S.W. 801; Vergara v. Kenyon (Tex.Com.App.) 261 S.W. 1009; Turner v. Moore, 81 Tex. 206, 16 S.W. 929.

We have carefully examined all of the authorities cited by appellants, as well as the entire record in this case, and we do not find any testimony upon which a jury verdict could have been based. We concluded, therefore, that the trial court did not commit error in giving to the jury the peremptory instruction, which he did, and that all of appellants' assignments should be overruled. Such being our conclusion, it follows that the judgment of the trial court will be affirmed.