**Opinion filed June 29, 2023**



In The

# Eleventh Court of Appeals

_____

## No. 11-21-00178-CV

_____

**JOHN FABELA, Appellant**

**V.**

**PRINTZ PROPERTY MANAGEMENT LLC, Appellee**

**On Appeal from the County Court at Law No. 2**
**Midland County, Texas**
**Trial Court Cause No. CC21805**

## M E M O R A N D U M   O P I N I O N

This case involves a Residential Leasing and Management Agreement between John Fabela and Printz Property Management LLC (Printz). Fabela alleges that Printz allowed a tenant to have pets on his property, in violation of the Residential Leasing and Management Agreement, and that Printz also failed to prevent the tenant from engaging in other activities that caused damage to the

property. The trial court granted summary judgment in favor of Printz. We affirm in part, and we reverse and remand in part.

*Background Facts*

In May 2016, Fabela entered into a Residential Leasing and Property Management Agreement with Printz. The agreement is written on a form that is promulgated by the Texas Association of Realtors. Pursuant to the terms of the agreement, Printz served as Fabela's broker for purposes of leasing and managing a residential property in Midland. Victoria Printz signed the agreement on behalf of Printz. Fabela contends that, at the time the parties entered into the agreement, he informed Victoria that he did not want any pets in the home, because his family members had allergies to some pets. As a result, the phrase "NO PETS ALLOWED" was inserted in a section of the agreement entitled "Special Provisions."

A few days later, Tora Wilbanks, acting on behalf of Printz, entered into a residential lease agreement with Lesa Lea Hubbard. This agreement included a pet addendum, which stated that Hubbard would be allowed to keep a black shih tzu dog on the property.

Fabela moved to Irvine, California, in June 2016. However, while visiting Midland on December 25, 2016, Fabela observed a large white dog in the back yard of the property. Fabela also observed that a satellite dish was attached to the roof. Fabela asserts that he then called Printz to complain about the presence of the dog.

Fabela received a copy of the lease "on or about February 3, 2017," when he was copied on a string of e-mails between Printz employees. Fabela contends that this was when he first learned that the lease included a pet addendum. Fabela sent an e-mail to Printz on February 1, stating that he was declaring Hubbard in default and indicating that he wanted to "exercise [his] Landlord's remedies under

2

Paragraph 27" in the lease.[1] Paragraph 27 concerns remedies, including termination, that are available to the landlord in the event of default. Fabela's e-mail also stated that the satellite dish had been installed without Fabela's approval and that "[t]he damage to the roof must be remedied as well."

On April 7, 2017, Belinda Duke, acting on behalf of Printz, sent an e-mail to Fabela inquiring about whether he would be willing to renew Hubbard's lease, which was scheduled to expire on May 31. Fabela replied on the following day, expressing his displeasure about the pet addendum to the existing lease and emphasizing that "[n]o [p]ets means no pets," particularly as it concerned dogs inside the house. He also stated that he needed the management company to comply with his wishes. Fabela also agreed to allow Hubbard to renew the lease if she would pay rent of $2450 per month. He reemphasized that, if Hubbard was going to move out, she needed to "repair the roof to the condition it was in before the satellite dish was installed."

On April 12, 2017, Duke signed an amendment on behalf of Fabela that extended the lease term until May 31, 2018. However, the lease extension did not modify the pet addendum. The same document was later signed by Hubbard.

In January 2018, while communicating with Duke about two repair requests that had been made by Hubbard, Fabela asked Duke "to go follow up to make sure they are in compliance with the no pet policy." It appears that, soon thereafter, Duke disclosed to Fabela that the pet addendum was still in effect. Several days later,

---

[1]Printz maintains that the February 1 e-mail, together with several other exhibits that were attached to Fabela's affidavit, were unauthenticated. This is incorrect. With the exception of Exhibit No. A-1, the text of which was also included in several of the other exhibits, Fabela described and referenced each of the exhibits in his summary judgment affidavit.

Duke sent an e-mail to Fabela apologizing for her "mistake" regarding the presence of a pet on the property. Fabela asserts that, prior to the January 2018 e-mail exchange, he had no knowledge that Hubbard's pet had remained on the property after the lease was extended.

In addition to his complaint about the presence of dogs on the premises, Fabela also contends (1) that Printz allowed "more people living in the home as [sic] allowed under the lease," resulting in—among other things—more than two cars being parked outside of the home; (2) that a parrot "was allowed to fly loose around the house and chewed up the moldings around the doors and walls"; (3) that Hubbard broke a lock to get access to a hot tub on the premises, and had been using the hot tub, against Fabela's wishes; (4) that a trampoline was in the backyard "against the rules"; and (5) that occupants had been smoking inside the house.

Fabela terminated the management agreement, effective February 9, 2018. Two months later, Fabela and Hubbard agreed to further extend the lease, this time until May 31, 2019. Like the first extension that was signed by Duke, the second extension, which was signed by Fabela, did not alter the pet addendum. In August 2018, Fabela issued a notice to vacate to Hubbard, and Hubbard moved out in response to the notice.

Fabela filed suit against Printz on August 30, 2019, asserting causes of action for negligence and breach of contract. Printz filed a hybrid traditional and no-evidence motion for summary judgment that the trial court granted.

*Analysis*

Fabela raises seven issues on appeal, all of which relate to the summary judgment in favor of Printz. We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010).

4

A party moving for traditional summary judgment bears the burden of proving that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W.3d 254, 257 (Tex. 2017). To be entitled to a traditional summary judgment, a defendant must conclusively negate at least one essential element of the cause of action being asserted or conclusively establish each element of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997). Evidence is conclusive only if reasonable people could not differ in their conclusions. *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005). If the movant initially establishes a right to summary judgment on the issues expressly presented in the motion, then the burden shifts to the nonmovant to present to the trial court any issues or evidence that would preclude summary judgment. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex. 1979).

"A no-evidence summary judgment is essentially a pretrial directed verdict, and we apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict." *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750–51 (Tex. 2003); *Heirs of Del Real v. Eason*, 374 S.W.3d 483, 486 (Tex. App.—Eastland 2012, no pet.). As such, we review the evidence in the light most favorable to the nonmovant, disregarding all contrary evidence and inferences. *King Ranch*, 118 S.W.3d at 751.

"A no evidence point will be sustained when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact." *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997) (citing Robert W. Calvert, *"No Evidence"*

5

and *"Insufficient Evidence" Points of Error*, 38 Tex. L. Rev. 361, 362–63 (1960)). Thus, "a no-evidence summary judgment is improperly granted if the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact." *King Ranch*, 118 S.W.3d at 751; *Tex. Petroleum Land Mgmt., LLC v. McMillan*, 641 S.W.3d 831, 840 (Tex. App.—Eastland 2022, no pet.). "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion' of a fact." *King Ranch*, 118 S.W.3d at 751; *McMillan*, 641 S.W.3d at 840. "More than a scintilla of evidence exists when the evidence 'rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.'" *King Ranch*, 118 S.W.3d at 751 (quoting *Havner*, 953 S.W.2d at 711); *McMillan*, 641 S.W.3d at 840.

Where, as here, the trial court does not specify the ground for its ruling, a summary judgment will be affirmed "if any of the grounds advanced by the motion are meritorious." *Bradley v. Shaffer*, 535 S.W.3d 242, 247 (Tex. App.—Eastland 2017, no pet.); *see also State v. Ninety Thousand Two Hundred Thirty-Five Dollars & No Cents in U.S. Currency ($90,235)*, 390 S.W.3d 289, 292 (Tex. 2013); *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872–73 (Tex. 2000).

*Negligence*

In his first issue, Fabela complains that the trial court erred in determining that there is no evidence to support his claims for negligence. "The elements of a negligence cause of action are a duty, a breach of that duty, and damages proximately caused by the breach of duty." *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex. 1995). Among other things, Printz's no-evidence summary judgment on Fabela's negligence cause of action asserted that there was no evidence of duty. Specifically, Printz asserted that its duties to Fabela, if any, arise solely as a result of the contract and that it therefore has no tort-based duties.

6

In Texas, claims must be brought on a contract if liability arises solely from the contract. *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 132 (Tex. 2005) (orig. proceeding). Thus, where the injury at issue is only the economic loss to the subject of a contract, the action sounds in contract alone. *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 417 (Tex. 2011); *1/2 Price Checks Cashed v. United Auto. Ins. Co.*, 344 S.W.3d 378, 387 (Tex. 2011); *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 495 (Tex. 1991) (quoting *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986)); *SCS Builders, Inc. v. Searcy*, 390 S.W.3d 534, 540 (Tex. App.—Eastland 2012, no pet.) (discussing *Sharyland*). In *Jim Walter Homes*, for example, the Reeds sued a mobile home manufacturer for failing to construct their home in a good and workmanlike fashion. 711 S.W.2d at 617. The Texas Supreme Court held that, because the Reeds claimed "that the house they were promised and paid for was not the house they received," such claim could only be characterized as a breach of contract. 711 S.W.2d at 618. Likewise, in *DeLanney*, a telephone company was sued for negligently failing to publish a Yellow Pages advertisement. 809 S.W.2d at 493. The Texas Supreme Court determined that, because the duty to publish the advertisement "arose solely from the contract," and because the claimed damages "were only for the economic loss caused by Bell's failure to perform," the claim arose solely from the contract. 809 S.W.2d at 495.

In this case, Fabela alleged that Printz failed to prevent Hubbard from damaging the property at issue. Printz's duties, if any, to take such actions arose solely from the contract, and must be determined based on the terms of the agreement. Likewise, Fabela seeks to recover damages from Printz for the resulting condition of the home. Such losses are directly connected to Printz's failure to perform its alleged contractual duties. We hold that, under these circumstances, Fabela's claims arise solely out of the contract.

7

We also conclude that Fabela's claims for negligence are barred by the statute of limitations. Suits for negligence are governed by the two-year statute of limitations. TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a) (West 2017); *Hunt Oil Co. v. Live Oak Energy, Inc.*, 313 S.W.3d 384, 387 (Tex. App.—Dallas 2009, pet. denied). As such, Fabela was required to bring his negligence claims "not later than two years after the day the cause of action accrue[d]." CIV. PRAC. & REM. § 16.003(a).

A cause of action generally accrues, and the statute of limitations begins to run, when facts come into existence that authorize a claimant to seek a judicial remedy. *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 514 (Tex. 1998). In the context of negligence cases, the legal injury rule normally applies. Under the legal injury rule, accrual occurs when "a wrongful act causes a legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred." *Sw. Energy Prod. Co. v. Berry–Helfand*, 491 S.W.3d 699, 721 (Tex. 2016); *see also Schlumberger Tech. Corp. v. Pasko*, 544 S.W.3d 830, 834 (Tex. 2018) (quoting *Berry-Hefland*, 491 S.W.3d at 721). Absent some exception, such as the discovery rule, injuries that arise or develop after the legal injury are still deemed to have accrued on the same date as the legal injury that caused them. *Pasko*, 544 S.W.3d at 834.

In this case, Fabela has pleaded that the discovery rule is applicable to his claims. The discovery rule delays accrual until the plaintiff "knew or in the exercise of reasonable diligence should have known of the wrongful act and resulting injury." *Id.* at 834 (quoting *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996)). Under the discovery rule, the limitations period begins to run as soon as the plaintiff discovers or should discover any harm, however slight, resulting from the negligence of the defendant. *Childs v. Haussecker*, 974 S.W.2d 31, 41 (Tex. 1998).

The summary judgment record demonstrates that Fabela first became aware that a dog was at the premises on December 25, 2016, when he drove by the house. He further became aware that Hubbard's lease included the dog addendum, and that a dog was likely present inside the house, in February 2017. At this point, Fabela knew that the condition of the house was being affected by the presence of pets. Additionally, Fabela claims that the roof to the house was damaged when Hubbard installed a satellite dish. Fabela also became aware on December 25, 2016, that a satellite dish had been installed, and he made requests that such damage be repaired in communications to Printz on February 1 and April 8, 2017. Accordingly, the summary judgment record conclusively establishes that Fabela could have and did, in fact, discover that the property had been damaged more than two years before he filed suit against Printz.

Because Fabela's claims sound in contract alone, and because his negligence cause of action is, in any event, barred by the statute of limitations, the trial court did not err in granting summary judgment on his cause of action for negligence. Accordingly, we overrule Fabela's first and third issues.

*Breach of Contract*

In his second issue, Fabela complains that the trial court erred in ruling that there was no evidence to support his claim for breach of contract. A claim for breach of contract includes the following elements: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff as a result of the defendant's breach. *Caprock Inv. Corp. v. Montgomery*, 321 S.W.3d 91, 99 (Tex. App.—Eastland 2010, pet. denied). The no-evidence portion of Printz's motion for summary judgment challenged the evidentiary support for the elements of performance and breach.

9

With respect to the element of performance, Fabela offered an unsworn declaration stating that he did everything that was required of him under the agreement, "including but not limited to arranging for any repairs on the property and paying [Printz] for its services under the agreement." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 132.001 (West 2019). In its brief, Printz does not point to anything in the record to indicate that Fabela failed to perform under the agreement. As such, the element of performance is adequately supported by the record.

We also conclude that there is evidence of a breach, although the nature of the breach is limited. The parties entered into a lease management agreement that specifically allowed Printz to negotiate and execute leases on behalf of Fabela, including the negotiation of amendments, extensions, and renewals. In so doing, Fabela appointed Printz to act as an agent on his behalf. *See Dipprey v. Double Diamond, Inc.*, 637 S.W.3d 784, 804 (Tex. App.—Eastland 2021, no pet.). However, the parties also inserted the words "NO PETS ALLOWED" in the Special Provisions section of the Residential Leasing and Management Agreement form. We construe this provision as a limitation of Printz's authority to enter into and negotiate leases, as well as amendments and extensions to such leases. Printz does not argue that the lease is ambiguous in this regard. *See Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995) ("[I]f a written contract is so worded that it can be given a definite or certain legal meaning, then it is not ambiguous."). Fabela presented summary judgment evidence showing that when Printz signed, and later extended, a lease on behalf of Fabela that allowed Hubbard to keep a shih tzu on the premises, Printz breached the agreement.

Fabela's claims for breach of contract, however, are not limited to the presence of a single shih tzu. As shown above, Fabela also argues that Printz breached the agreement by failing to prevent the following: (1) the installation of a

satellite dish; (2) the presence of at least one other dog; (3) the presence of a parrot; (4) smoking inside the home; (5) a broken lock and subsequent use of a hot tub; (6) the use of a trampoline; and (7) the presence of additional occupants and parked vehicles. Fabela did not meet his burden of presenting summary judgment evidence to create a genuine issue of material fact as to a breach of contract with respect to these complaints. While the contract limits Printz's authority to allow pets on the premises, it does not indicate that Printz is responsible for monitoring the property for tenant misconduct and/or ensuring that the premises are not damaged by the tenant. To the contrary, as set forth below, the agreement explicitly states that Printz is not responsible or liable for loss or damage to real or personal property and that Printz "is not responsible . . . for . . . damages to [Fabela] caused by a tenant's breach of the lease."

Printz maintains, and we agree, that each of the activities described above would have constituted a breach of Hubbard's obligations under the lease. Among other things, the lease prohibits Hubbard from (1) keeping any other pets on the property, (2), changing, adding, or rekeying any locks, (3) making holes in the woodwork, (4) installing satellite receivers, (5) keeping or permitting any items that cause liability or that affect insurance premiums, and (6) permitting persons other than her two children from residing on the property. The lease also indicates that neither Hubbard nor any other guest, family member, or occupant, was permitted to smoke on the property. Accordingly, while some summary judgment evidence showed that Printz breached the contract, that evidence showed that the breach was limited to Printz's failure to contractually prohibit the presence of a shih tzu on the property. On that basis, Fabela's second issue is sustained in part and overruled in part.

11

*The "Liability and Indemnification" Clauses*

In his fourth issue, Fabela argues that the trial court erred in granting summary judgment based on section 16 of the contract, which is labeled "Liability and Indemnification." Section 16 reads as follows:

16. LIABILITY AND INDEMNIFICATION:

A. [Printz] is not responsible or liable in any manner for personal injury to any person or for loss or damage to any person's real or personal property resulting from any act or omission not caused by [Printz's] negligence, including but not limited to injuries or damages caused by:
   (1) other brokers, their associates, inspectors, appraisers, and contractors who are authorized to access the Property;
   (2) acts of third parties (for example, vandalism, theft, or other criminal acts);
   (3) freezing or leaking water pipes;
   (4) failure to properly water the foundation of the Property;
   (5) a dangerous condition or environmental condition on the Property; or
   (6) the Property's non-compliance with any law or ordinance.

B. [Printz] is not responsible or liable in any manner for:
   (1) any late fees or other charges [Fabela] incurs to any creditor caused by late or insufficient payments by any tenant in the Property; or
   (2) damages to [Fabela] caused by a tenant's breach of a lease.

C. [Fabela] agrees to protect, defend, indemnify, and hold [Printz] harmless from any damage, costs, attorney's fees, and expenses that:
   (1) are caused by [Fabela], negligently or otherwise;
   (2) arise from [Fabela's] failure to disclose any material or relevant information about the Property;
   (3) are caused by [Fabela] giving incorrect information to any person; or

(4) are related to the management of the Property and are not caused by [Printz], negligently or otherwise.

D. [Fabela] is responsible and liable for all contracts and obligations related to the Property (for example, maintenance, service, repair and utility agreements) entered into before or during this agreement by [Fabela] or by [Printz] under [Printz's] authority under this agreement. [Fabela] agrees to hold [Printz] harmless from all claims related to any such contracts.

Both parties describe various provisions in this section as "limitations of liability." We believe this characterization is incorrect. "Limitation of liability" normally refers to a clause that sets an upper limit to the amount that is recoverable under a contract. *See Arthur's Garage, Inc. v. Racal-Chubb Sec. Sys., Inc.*, 997 S.W.2d 803, 810 (Tex. App.—Dallas 1999, no pet.). Instead, we believe that the language that Printz relies on in section 16 should be characterized as a series of *disclaimers* of liability. Regardless of the distinction, we address the issue based on the substance of the arguments made by the parties. *See Horton v. Stovall*, 591 S.W.3d 567, 567–68 (Tex. 2019) ("Rather than disposing of appeals based on harmless procedural defects, 'appellate courts should reach the merits of an appeal whenever reasonably possible.'") (quoting *Perry v. Cohen*, 272 S.W.3d 585, 587 (Tex. 2008)).

When interpreting an agreement, our primary concern is to ascertain and give effect to the intent of the parties as expressed in the contract. *In re Serv. Corp. Int'l*, 355 S.W.3d 655, 661 (Tex. 2011); *Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex. 2006) (citations omitted). We therefore must examine and consider the entire writing in an effort to harmonize and give effect to all its provisions, so that none are rendered meaningless. *In re Serv. Corp.*, 355 S.W.3d at 661. "If the language lends itself to a clear and definite legal meaning, the contract

13

is not ambiguous and will be construed as a matter of law." *Great Am. Ins. Co. v. Primo*, 512 S.W.3d 890, 893 (Tex. 2017).

In the "Liability and Indemnification" section, Printz attempts to disclaim liability in a variety of circumstances. Subsection (B) disclaims Printz's responsibility for tenant misconduct, whereas subsection (A) disclaims responsibility for misconduct by other third parties, such as contractors, brokers, and vandals. Subsection (A) also states that Printz is not responsible for property maintenance and code compliance issues. Subsection (C) indicates that Fabela will hold Printz harmless for damages caused by Fabela's own misconduct. It also indicates that Fabela will hold Printz harmless for mismanagement of the property, unless such damage is caused by Printz.[2] Finally, subsection (D) disclaims Printz's responsibility for Fabela's contractual obligations. We note, however, that Printz does not assert that subsection (D) independently absolves them of liability for damages, nor does it brief how subsection (D) would preclude Fabela's recovery. As a result, we restrict our analysis to subsections (A)–(C).

Based on a review of the entire writing, and in particular, section 16, we conclude that the primary intent of these provisions is to indicate that, while Printz has undertaken certain obligations as Fabela's broker, such obligations are limited in scope, and do not extend to the various eventualities and damages that are described therein.

Subsection (B) expressly indicates that Printz is not contractually responsible for damage that results from "a tenant's breach of a lease." However, subsection (B) does not fully exonerate Printz from liability. While this language

---

[2]In subsection (C), Fabela also agrees to defend and indemnify Printz for various claims that might result from Fabela's misconduct. This language is not applicable under the facts of this case.

unambiguously alleviates Printz from liability for events that are a result of Hubbard's failure to comply with the lease, some of Fabela's damages—namely, those arising out of the presence of a shih tzu on the property—do not involve a breach of the lease.

Similarly, while subsection (C) provides that Fabela will hold Printz harmless for damages that are related to the management of the property, it expressly indicates that it does not apply to damages that are caused by Printz. As such, because Printz's breach of the "no pets allowed clause" is a cause of some of the claimed damages, subsection (C) does not fully apply.

We likewise do not believe that the language in subsection (A), which disclaims responsibility for any "loss or damage to . . . real . . . property . . . not caused by [Printz's] negligence," is broad enough to include Printz's liability for breach of the "no pets allowed" clause. While the disclaimers in section 16 may clarify that Printz does not undertake certain responsibilities that are not otherwise addressed in the agreement, they do not eliminate responsibility for contractual duties that it has expressly undertaken, including its duty to avoid lease obligations that allow pets on the property. To hold otherwise would mean that Printz could never be called to account in damages for breach of the "no pets allowed" clause, a result that strips such language of any practical meaning or effect. *See In re Serv. Corp.*, 355 S.W.3d at 661.

Our decision would be no different if we were to find that the disclaimers of liability in section 16 and the "no pets allowed" clause were in conflict. In harmonizing provisions that appear to conflict, "[a]dditions of handwritten or typewritten words in, and deletions from, a printed form show the parties' particular intention and control over pre-printed terms." *U.S. Fire Ins. Co. v. Lynd Co.*, 399 S.W.3d 206, 216 (Tex. App.—San Antonio 2012, pet. denied); *see also Southland*

*Royalty Co. v. Pan Am. Petroleum Corp.*, 378 S.W.2d 50, 57 (Tex. 1964); *McMahon v. Christmann*, 303 S.W.2d 341, 344 (Tex. 1957) ("One of the rules of construction for resolving conflicts requires that typewritten matter in a contract be given effect over printed matter."); *McCreary v. Bay Area Bank & Tr.*, 68 S.W.3d 727, 732 (Tex. App.—Houston [14th Dist.] 2001, pet. dism'd); *Easy Living, Inc. v. Cash*, 617 S.W.2d 781, 785 (Tex. App.—Fort Worth 1981, no writ). As such, in the event of any conflict, the "no pets allowed clause"—which the parties inserted into the Texas Association of Realtors standard form—would control over the language in section 16.

We hold that, while the disclaimers in subsections (A), (B), and (C) are generally applicable to the claims and related damages asserted by Fabela, they do not apply to Fabela's claim for breach of contract arising out of the presence of a shih tzu on the property. Issue four is sustained in part and overruled in part.

*Failure to Mitigate*

In his fifth issue, Fabela complains that the trial court erred in granting summary judgment on Printz's affirmative defense of failure to mitigate. Printz did not plead failure to mitigate in the trial court. Fabela correctly points out that this omission prevents Printz from securing a summary judgment on the affirmative defense of mitigation. *See* TEX. R. CIV. P. 94; *Austin Hill Country Realty, Inc. v. Palisades Plaza, Inc.*, 948 S.W.2d 293, 300 (Tex. 1997) (recognizing complete failure to mitigate as an affirmative defense); *Phillips v. Phillips*, 820 S.W.2d 785, 789 (Tex. 1991) ("As a general rule, an affirmative defense must be pleaded or it is waived."); *Feazell v. Mesa Airlines, Inc.*, 917 S.W.2d 895, 901 (Tex. App.—Fort Worth 1996), *writ denied*, 938 S.W.2d 31 (Tex. 1997) ("A defendant-movant is not entitled to summary judgment on an affirmative defense that is not pled in its answer and appears for the first time in its motion for summary judgment."); *see also Allstar*

16

*Refinishing & Collision Ctr., Inc. v. Rosas*, No. 11-07-00268-CV, 2009 WL 481885, at *3 (Tex. App.—Eastland Feb. 26, 2009, no pet.) (mem. op.) ("The mitigation-of-damages doctrine is an affirmative defense."). On appeal, Printz does not respond to this issue.

Because Printz did not plead failure to mitigate in the trial court, issue five is sustained.

*Ratification*

In his sixth issue, Fabela complains that the trial court erred in granting summary judgment for Printz on the issue of ratification. "Ratification is the adoption or confirmation by a person with knowledge of all material facts of a prior act which did not then legally bind him and which he had the right to repudiate." *BPX Operating Co. v. Strickhausen*, 629 S.W.3d 189, 196 (Tex. 2021) (quoting *Wise v. Pena*, 552 S.W.2d 196, 199 (Tex. App.—Corpus Christi–Edinburg 1977, writ dism'd); *Tex. Petroleum Land Mgmt., LLC v. McMillan*, 641 S.W.3d 831, 844 (Tex. App.—Eastland 2022, no pet.). It operates as an agreement, express or implied, to be bound by the act of another performed for him. *Strickhausen*, 629 S.W.3d at 196. Ratification may occur by express act or word, or it may be inferred by a party's course of conduct. *Id.*

Where the facts are uncontroverted, ratification can be decided as a matter of law. *Id.* Whether a party has ratified changes to a contract is a matter of intent. *Id.*; *Smith v. Estill*, 28 S.W. 801, 805 (Tex. 1894) ("To constitute a ratification, it must appear that the acts relied upon were done with a full knowledge of all the facts, and with intent to adopt the unauthorized act in question.").

When analyzing a claim of implied ratification, a party's subjective state of mind is immaterial. *Strickhausen*, 629 S.W.3d at 197. Rather, courts look to objective evidence of intent based on the party's course of conduct under "the totality

17

of the circumstances." *Id.* (quoting *State v. One (1) 2004 Lincoln Navigator*, 494 S.W.3d 690, 706 (Tex. 2016) (Devine, J., concurring)). Furthermore, to avoid undue interference with a party's right to reject contract terms to which they do not agree, the party's actions must be shown to "*clearly* evidenc[e] an intention to ratify." *Strickhausen*, 629 S.W.3d at 197-98 (quoting *Chrisman v. Electrastart of Houston, Inc.*, No. 14-02-00516-CV, 2003 WL 22996909, at *5 (Tex. App.—Houston [14th Dist.] Dec. 23, 2003, no pet.) (mem. op.)).

In support of a summary judgment on its claim of ratification, Printz claims that Fabela approved an extension of the lease in May 2017 even though he was aware that (1) a dog was on the premises, and (2) the lease included a pet addendum. Printz claims that Fabela then kept payments and failed to object to the language of the new lease. Finally, Printz claims that Fabela ultimately agreed to his own extension of the lease (including the pet addendum) in 2018.

In his response to the motion, Fabela offered evidence that—during the same week that he discovered a dog on the property—he called Printz to complain. He also offered evidence by which it can be inferred that he asked for the pet addendum to be removed on renewal. This evidence is further bolstered by Duke's e-mail, which apologizes for her apparent mistake when she included the pet addendum in the renewal.

We are also unconvinced that Fabela's acceptance of rent establishes ratification as a matter of law, particularly considering the evidence showing that Printz had already bound Fabela to performance under the 2016 and 2017 leases before he became aware that the leases included pet addendums. Likewise, Fabela's agreement to a pet addendum in the 2018 lease does not retroactively establish ratification of the 2016 and 2017 leases as a matter of law.

Because Fabela has raised a genuine issue of material fact concerning his ratification of the agreement, summary judgment is not proper, and Fabela's sixth issue is sustained.

*Waiver*

In his seventh issue, Fabela complains that the trial court erred in granting summary judgment on the issue of waiver. Waiver is "an intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right." *Chalker Energy Partners III, LLC v. Le Norman Operating LLC*, 595 S.W.3d 668, 676 (Tex. 2020) (quoting *Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex. 2003) (per curiam)); *Tex. Ass'n of Sch. Boards Risk Mgmt. Fund v. Colorado Indep. Sch. Dist.*, 660 S.W.3d 767, 773 (Tex. App.—Eastland 2023, no pet.). However, a right cannot be waived if the person sought to be charged with waiver says or does nothing inconsistent with an intent to rely on such right. *Chalker*, 595 S.W.3d at 677. Thus, to establish waiver by conduct, such conduct must be "unequivocally inconsistent with claiming a known right." *Id.* (quoting *Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 485 (Tex. 2017); *Van Indep. Sch. Dist. v. McCarty*, 165 S.W.3d 351, 353 (Tex. 2005)); *see also Moore v. Moore*, 568 S.W.3d 725, 731 (Tex. App.—Eastland 2019, no pet.) ("[T]he surrounding facts and circumstances must clearly demonstrate an intent to waive the right.").

In support of its affirmative defense of waiver, Printz relies on the same facts that support its affirmative defense of ratification. The evidence that Fabela offered in connection with the issue of ratification—as described above—also demonstrates a genuine issue of material fact as to whether Fabela acted in a manner that was unequivocally inconsistent with claiming his right to enforce the "no pets allowed" clause. As such, summary judgment on the issue of waiver was also improper, and Fabela's seventh issue is sustained.

*Printz's Objections*

Printz objects to several statements that are made in affidavits that Fabela filed in opposition to the motion for summary judgment. Printz contends that such statements are conclusory. Printz did not object to these statements in the trial court. However, Printz maintains that objections based on conclusory evidence can still be made on appeal under the Texas Supreme Court's holding in *Wal-Mart Stores, Inc. v. Merrell*, 313 S.W.3d 837 (Tex. 2010). In *Merrell*, the supreme court held that conclusory expert testimony cannot be used to *support* a summary judgment, even when no objection was made to the testimony in the trial court. 313 S.W.3d at 839. We have reviewed the statements to which Printz now objects and have determined that none of those statements are germane to our holdings above. As such, it is not necessary to reach this issue, and we do not comment on whether the holding in *Merrell* should be extended to include sworn statements of fact that are offered in response to motions for summary judgment.

*This Court's Ruling*

We hold that: (1) Fabela has failed to raise a genuine issue of material fact as to his cause of action for negligence; (2) Fabela's claims for negligence are barred by the two-year statute of limitations; (3) Fabela has successfully raised a genuine issue of material fact as to his cause of action for breach of contract, but only with respect to the presence of the shih tzu on the property; (4) while Printz's summary judgment evidence does not conclusively establish that it disclaimed liability for the presence of a shih tzu on the property, it conclusively disclaims liability as to Fabela's remaining damages; (5) Printz has waived the issue of failure to mitigate; and (6) there is a genuine issue of material fact as to Printz's affirmative defenses of ratification and waiver. We affirm the judgment of the trial court with respect to Fabela's cause of action for negligence. However, we reverse the judgment of the

20

trial court with respect to Fabela's cause of action for breach of contract, and we remand that claim to the trial court for further proceedings consistent with this opinion.


JOHN M. BAILEY

CHIEF JUSTICE


June 29, 2023

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.